# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **CHRISTOPHER EUGENE BROOKS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CV 05-B-2357-S** |
| ) | |
| **RICHARD F. ALLEN, Commissioner of** ) | |
| **the Alabama Department of Corrections;** ) | |
| **ATTORNEY GENERAL OF THE** ) | |
| **STATE OF ALABAMA,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This case is presently pending before the court on Petitioner's Second Amended Petition for Writ of Habeas Corpus (doc. 18),[1] and on Petitioner's Objection to the Magistrate Judge's Report and Recommendation, (doc. 37). Petitioner asks the court for relief from his death sentence; he claims:

> The conviction and sentence in this case are unreliable. Mr. Brooks, alone with no friends or family in Birmingham, was at the mercy of his court appointed defense counsel. His trial counsel never adequately communicated with Mr. Brooks concerning his case or his constitutional rights. They did not adequately research the facts of his case. Neither did they perform any investigation into Mr. Brooks' background with the thought of mitigation. Defense counsel relied almost solely on the prosecutors discovery to prepare the case for trial. Very little was done to defend Mr. Brooks and next to nothing was done to save his life during the penalty phase of the trial or at sentencing.

---

[1] Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

(Doc. 18 ¶ 6.)

The Magistrate Judge recommended the Petition be dismissed with prejudice.  For the reasons set forth below, the court is of the opinion that the Magistrate Judge's Report and Recommendation is due to be adopted, with the changes set forth below, and the Petition is due to be denied.

## I.  STANDARD OF HABEAS REVIEW

Because Brooks is in state custody and his first petition for federal habeas corpus relief was filed in 2005, his habeas petition is governed by 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"].  *See Payne v. Allen*, 539 F.3d 1297, 1312 (11th Cir. 2008).  Section 2254(d) provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (d).  Under the AEDPA, this court's review of the state court's habeas decision is "greatly circumscribed and is highly deferential to the state courts."  *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2002), *quoted in Payne*, 539 F.3d at 1312.

> [W]here relief is sought from a sentence that resulted from the judgment of a court of record,[2] . . . considerable deference is owed to the court that ordered confinement.  Likewise in those cases the prisoner should exhaust adequate alternative remedies before filing for the writ in federal court.  Both aspects of federal habeas corpus review are justified because it can be assumed that, in the usual course, a court of record provides defendants with a fair, adversary proceeding.   In cases involving state convictions this framework also respects federalism . . . .

*Boumediene v. Bush*, 128 S. Ct. 2229, 2268 (2008)(citing *Brown v. Allen*, 344 U.S. 443, 506, (1953); *Ex parte Royall*, 117 U.S. 241, 251-52 (1886))(internal citation omitted).

"A state court's adjudication is 'contrary to' federal law if it 'arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'"  *Wellons v. Hall*, 554 F.3d 923, 934 (11th Cir. 2009)(quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).  "[A] state court's adjudication is 'an unreasonable application of' clearly established federal law if the state court 'identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id*. (quoting *Williams*, 529 U.S. at 413).  When "it is the state court's application of governing federal law that is challenged, the decision must be shown to be not only erroneous, but objectively unreasonable."  *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009)(quoting *Middleton v. McNeil*, 541 U.S. 433, 436

---

[2]The Court used the term "court of record" to refer to courts of general jurisdiction. *Boumediene v. Bush*, 128 S. Ct. 2229, 2268 (2008).

(2004)(per curiam)(quoting *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003)(per curiam)))(internal quotations omitted). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)(citing *Williams*, 529 U.S. at 410), *quoted in Waddington*, 129 S. Ct. at 831.

"A habeas petitioner generally may not raise a claim in federal court that was not first exhausted in state court." *Williams v. Allen*, 542 F.3d 1326, 1345 (11th Cir. 2008)(citing 28 U.S.C. § 2254(b)(1); *Kelley v. Secretary for Department of Corrections*, 377 F.3d 1317, 1343 (11th Cir. 2004)). If a petitioner fails to raise any federal claim in state court at the time and in the manner dictated by the state's procedural rules, the state court can decide that claim is procedurally defaulted and, therefore, not entitled to a review on the merits. "As a general matter, and absent some important exceptions, when a state court denies relief because a party failed to comply with a regularly applied and well-established state procedural rule, a federal court will not consider that issue." *Smith v. Texas*, 550 U.S. 297, 313 127 S. Ct. 1686, 1697 (2007)(citing *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991)). If the last state court to examine the claim finds it to be procedurally defaulted, then federal review of the claim is also precluded pursuant to federal procedural default principles. *Johnson v. Singletary*, 938 F.2d 1166, 1173 (11th Cir. 1991); *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999). The typical method of curing procedural default is to show both cause as to why the issue was defaulted and prejudice to the petitioner as a result of the default. *McCleskey*

4

*v. Zant*, 499 U.S. 467, 493-94 (1991); *see also United States v. Frady*, 456 U.S. 152, 167-68 (1982).

## II.  <u>DISCUSSION</u>

### A.  WITHDRAWN OR CONCEDED CLAIMS

Brooks has withdrawn or conceded the following claims:

1. Mr. Brooks Did Not Receive Effective Assistance of Appellate and or Trial Counsel –

a. Errors of trial court in properly instructing the jury on the law – Presumption of Innocence.  (Doc. 29 at 21-22; doc. 18, § A.2. at ¶¶ 34-35; doc. 35 at 5; doc. 37 at 3.)[3]

b. Remarks By The Prosecutor During Closing Argument Were Improper and Prejudicial –

i. Derogation of constitutional rights to assistance of counsel and a jury trial.  (Doc. 29 at 25; doc. 18, § A.3 at ¶¶ 39-40; doc. 35 at 5; doc. 37 at 3.)
ii. Reference to evidence outside the record . (Doc. 18, § A.3. at ¶ 43; doc. 35 at 10-11;  doc. 37 at 25.)[4]

---

[3]In Petitioner's Objections to the Magistrate Judge's Report and Recommendation, counsel for Petitioner noted: ***The Magistrate Judge correctly identified several issues which Mr. Brooks decided to withdraw or concede***.  That said, there were several caveats associated with the concessions.  Notwithstanding the fact that this writer came to the conclusion that  these issues did not rise to the level required for habeas review, the matters complained of do focus on the totality of the representation Mr. Brooks received from his trial counsel.  If nothing else, these issues put some context in viewing his other issues.  Therefore, Mr. Brooks requests this court to review these issues in its process of evaluating these pleadings."  (Doc. 37 at 3 (emphasis added).)

[4]In his Objections to the Magistrate Judge's Report and Recommendation, Petitioner noted as follows:

While disagreeing with the Magistrate Judge's report, it should

5

c.  Numerous prejudicial photographs of the victim, as well as a tape recording of her voice, were erroneously admitted into evidence during the guilt phase of the trial. (Doc. 29 at 31; doc. 18, § A.5; doc. 35 at 5; doc. 37 at 3.)

d.  The trial court failed to ensure that all the proceeding were recorded.  (Doc. 29 at 31-32; doc. 18, § A.6.; doc. 35 at 5; doc. 37 at 3.)

e.  The trial court should have removed several jurors for cause from Mr. Brook's jury venire.  (Doc. 18, § A.7.; doc. 37 at 28-29.)

f.  African-Americans and Women were under represented in the pools from which petitioner's jury venire and grand jury were selected. (Doc. 29 at 39; doc. 18 § A.8.; doc. 35 at 6; doc. 37 at 3.)

2.  Appellate counsel was ineffective during the appeal phase for failing to adequately research, prepare, raise and argue trial counsel's ineffectiveness during the penalty phase of petitioner's trial, which resulted in the unjust and unconstitutional imposition of the death penalty –

a.  Petitioner's rights to due process and a fair and reliable sentencing were violated by the introduction of numerous gruesome and unduly prejudicial color slides of the victim's wounds. (Doc. 29 at 50; doc. 18 § C.4. at ¶¶ 94-95; doc. 35 at 6; doc. 37 at 3.)

b.  The prosecutor's remarks during closing argument to the jury n the sentencing phase were improper and highly prejudicial.  (Doc. 29 at 50-51; doc. 18 § C.6. at ¶¶ 118-126; doc. 35 at 6; doc. 37 at 3.)

---

be noted that within this issue are the following:  The comments relating to the derogation of Constitutional Rights was conceded.  After reviewing these issues, ***Mr. Brook's (sic) has concluded that his issue concerning references to evidence outside the record were probably a justified reply in kind argument by the prosecutor***.

(Doc. 37 at 25 (emphasis added).)

c.  The trial court erred in its instructions to the jury during the sentencing phase of the trial.  (Doc. 29 at 51-52; doc. 18 § C.7. at ¶¶ 127-129; doc. 35 at 6; doc. 37 at 3.)

3.  Appellate counsel was ineffective for failing to adequately research, prepare, raise and argue trial counsel's ineffectiveness during the sentencing hearing before the court, including the complete failure to research, prepare, raise and argue valid and meritorious legal claims, which resulted in the trial court erroneously, unjustly and unconstitutionally imposing the death penalty

a.   The trial court erred in sentencing petitioner to the death penalty.  (Doc. 29 at 52; Doc. 18 § D.1. at ¶¶ 132-142, doc. 35 at 6; doc. 37 at 3.)

b.  The imposition of the death penalty in this case constitutes disproportionate and cruel and unusual punishment under state and federal law.  (Doc. 29 at 52; doc. 18 § D.3.; doc. 35 at 6; doc. 37 at 3.)

c.  Petitioner's death sentence is unconstitutional because it was sought and imposed pursuant to a pattern of racial bias.  (Doc. 29 at 53; doc. 18, § D.6.; doc. 35 at 6; doc. 37 at 3.)

4.  Appellate counsel was ineffective during the appeal phase for failure to research, prepare, raise and argue valid and meritorious legal claims –

a.  The evidence was insufficient to sustain the capital murder conviction.  (Doc. 29 at 53-54; doc. 18, § E.1.; doc. 35 at 6; doc. 37 at 3.)

b.  The state improperly presented evidence of other bad acts.  (Doc. 29 at 53-54; doc. 18, § E.2.; doc. 35 at 6; doc. 37 at 3.)

c.  The trial court unconstitutionally and arbitrarily denied petitioner youthful offender treatment and failed to transcribe the hearing.  (Doc. 29 at 53-54; Doc. 18, § E.3.; doc. 35 at 7; doc. 37 at 3.)

5.  Appellate counsel was ineffective during the appeal phase due to inadequate and incompetent investigation and presentation of the issues which were raised on appeal –

a.  Petitioner's counsel were ineffective for failure to prepare for the sentencing phase of the trial and failure to offer any mitigation evidence except the testimony of his mother.  (Doc. 29 at 60; doc. 18, § F.3.; doc. 35 at 7; doc. 37 at 3.)

b.  The trial court erred in its instructions to the jury at the guilt phase of the trial concerning reasonable doubt.  (Doc. 29 at 60; doc. 18, § F.4.; doc. 35 at 7; doc. 37 at 3.)

Based on petitioner's concessions, the Recommendation to deny the claims will be adopted and these claims will be dismissed.

## B.  REMAINING CLAIMS

### 1.  Failure to Plead with Particularity

The Report and Recommendation finds that petitioner failed to plead three claims with the particularity required by Rule 2 of the Rules Governing Section 2254 Cases.  (Doc. 35 at 7-8.)  "A prime purpose of Rule 2(c)'s demand that habeas petitioners plead with particularity is to assist the district court in determining whether the State should be ordered to 'show cause why the writ should not be granted.'"  *Mayle v. Felix*, 545 U.S. 644, 656 (2005).  Rule 2(c) states:

The petition must:

(1) specify all the grounds for relief available to the petitioner;

(2) state the facts supporting each ground;

(3) state the relief requested;

(4) be printed, typewritten, or legibly handwritten; and

8

(5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

Rules Governing § 2254 Cases, Rule 2.  The Report and Recommendation lists three claims that "must be dismissed for failure to provide a satisfactory foundation" –

1.  Petitioner did not receive effective assistance of appellate and/or trial counsel because he "was denied effective assistance of counsel because of inadequate preparation for trial and unreasonable defense strategy."  (Doc. 18 § A.4.; doc. 35 at 7.)

2.  Appellate counsel was ineffective during the appeal phase because she failed to adequately research, prepare, raise and argue trial counsel's ineffectiveness during the penalty phase of petitioner's trial, particularly their "failure to investigate, discover, and present mitigating evidence."  (Doc. 18 § C.1 ¶¶ 78-86; doc. 35 at 8.)

3.  Appellate counsel was ineffective for failing to adequately research, prepare, raise and argue trial counsel's ineffectiveness during the sentencing hearing before the court, particularly because of their "failure to investigate and present mitigating evidence.  (Doc. 18 § D.5; doc. 35 at 8.)

The court finds that these claims are due to be denied.

> **a.  Petitioner did not receive effective assistance of appellate and/or trial counsel because he "was denied effective assistance of counsel because of inadequate preparation for trial and unreasonable defense strategy."  (Doc. 18 § A.4.; doc. 35 at 7.)**

The Report and Recommendation states that this claim is due to be denied because it is not pled with sufficient particularity.  (Doc. 35 at 7.)  The Magistrate Judge notes that "[m]any of Brooks' factual allegations are not paired with any citation to the record."  (*Id.* at  n.3.)  Indeed, this part of the Petition does not cite to the record.  (*See* doc. 18 ¶¶ 45-49.)  Similarly, Brooks does not cite to the state-court record in his Reply to the State's Brief in

Opposition. (*See* doc. 29 at 29-30.) However, in his Objection, Brooks cites to his testimony

from his Rule 32 hearing. (Doc. 37 at 8-9.) He states:

> According to Mr. Brooks, the first time he saw Mr. Gomany (one of his
> appointed trial counsel) was in January of 1993 during the first hearing Mr.
> Gomany attended after being assigned to represent him. [Vol. 9, tab 26] at 85.
> From that meeting until his trial in September 1993, Mr. Gomany saw Mr.
> Brooks in jail only one time. And that was when Mr. Brooks was first brought
> to the Jefferson County jail. Between that one visit and the trial, the only time
> he saw Mr. Gomany was at the various court appearances leading up to his
> trial. *Id*. at 86.

> He saw Mr. Boudreaux less. From the time Mr. Brooks was brought to
> Jefferson County until the trial in September[,] Mr. Brooks testified that Mr.
> Boudreaux never came to see him in jail. *Id*. at 87. He was, however, able to
> talk to him once on the telephone prior to trial. He was not able to contact Mr.
> Gomany by telephone at all. *Id*. Mr. Brooks testified that he was able to
> confer with his trial counsel during his trial for about fifteen minutes. *Id*. at
> 91.

> Trial Counsel made available discovery to Mr. Brooks several days
> before trial. While he was able to review the information prior to trial, he had
> no opportunity to discuss it with his lawyers before trial. *Id*. at 92-93. No
> investigator was used in preparation for trial. Although Judge Cahill offered
> to approve funds for an investigator at the preliminary hearing, the offer was
> turned down on the basis that an investigator was unnecessary. *Id*. at 95.
> Despite Mr. Brooks' suggestions that he had available some character
> witnesses, trial counsel elected not to call them. *Id*.

(Doc. 37 at 8-9.)

The court finds that, although he failed to cite to the record in his Amended Petition,

Brooks's Objection is sufficiently pled. Nevertheless, he has not shown that the decision of

the Alabama courts  regarding the effectiveness of Brooks's trial and appellate counsel was

objectively unreasonable or even erroneous.

"An ineffective assistance claim has two components:  A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id*. at 687-88.  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id*. at 689.  Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy."  *Id*.

> The purpose of ineffectiveness review is not to grade counsel's performance.  We recognize that representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.  Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad.  To state the obvious:  the trial lawyers, in every case, could

have done something more or something different.  So, omissions are
inevitable.  But, the issue is not what is possible or what is prudent or
appropriate, but only what is constitutionally compelled.

*Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(citing, *inter alia*, *Burger*

*v. Kemp*, 483 U.S. 776, 794 (1987); *Strickland*, 466 U.S. at 693, 697)(internal quotations,

citations, and footnote omitted).

Thus, "[t]hat is why the cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far between, and cases in which

deliberate strategic decisions have been found to constitute ineffective assistance are even

fewer and farther between."  *Williams v. Head*, 185 F.3d 1223, 1227 (11th Cir. 1999).

In addressing the claim that Brooks's appellate counsel had been ineffective in

arguing that his trial counsel was ineffective, the circuit court found that "trial counsel's

performance regarding the guilt phase of Brooks' trial was not deficient and, therefore,

Brooks' claim of ineffective assistance of appellate counsel must fail."  (Vol. 27, tab 62 at

41-42.)  The court held:

> To properly consider the representation Brooks was provided during his
> trial for capital murder, one must first take into account the case against him.
> Any theory of defense will obviously be formulated based upon the strength
> and type of the evidence the State is expected to present.  In this case, the
> evidence against Brooks was accurately described by trial counsel as
> "overwhelming."  In its opinion affirming his conviction and sentence, the
> Court of Criminal Appeals summarized the evidence as follows:

>> The evidence at trial showed that the appellant and the victim
>> met while working as counselors at a camp in New York state.  On
>> December 31, 1992, the victim's body was found under the bed in the

bedroom of her apartment in Birmingham, Alabama.  She had been bludgeoned to death, and she was naked from the waist down.

On the night before the victim's body was found, [the victim's] co-worker . . . saw the appellant enter the restaurant where they worked and saw the victim talking to the appellant.  Later that night, the victim spoke with another friend by telephone; that friend heard a male voice in the background and the victim told her friend that a friend was sleeping on her living room floor.

A DNA analysis was performed on semen found in the victim's vagina.  The results were compared with the appellant's blood.  There was testimony that the odds of finding another person with the same DNA as the appellant's and as found in the semen taken from the victim's body would be 1 in 69,349,000 among white persons and 1 in 310,100,000 among black persons.  A latent print of the appellant's palm was found on the victim's left ankle.  A bloody fingerprint matching the appellant's was found on a doorknob in the victim's bedroom, as were two other matching latent fingerprints.  The appellant's thumbprints were also found on a note in the victim's apartment.

The evidence further showed that the appellant was seen driving the victim's car on the night of December 31 and that he told a witness that he "had to fuck that girl to get that car."  The car was found in Columbus, Georgia, where the appellant resided.  Inside the car was a package of photographs with the name "Brooks, C." on the package.  When the appellant was arrested, he had in his possession the victim's car keys and her Shell Oil Company credit card, which he had used on several occasions.  He had also cashed the victim's paycheck and one of her personal checks. Several items were missing from the victim's apartment and the evidence showed that the appellant had pawned these items at various pawnshops in Columbus.

*Brooks v. State*, 695 So.2d 176, 178-79 (Ala. Crim. App. 1996).

Based upon the strength of the evidence against their client, trial counsel developed a "reasonable doubt" defense specifically directed at the charges elevating the murder to a capital offense – burglary, rape, and robbery.

During these proceedings, trial counsel partially described this strategy as follows:

> In Alabama, people think of burglary as somebody breaks in a house and breaks in a building.  In Alabama you can commit a burglary not only by breaking in in the technical sense but by entering lawfully but remaining unlawfully.
>
> So that State's position was not going to be that they were in her apartment by breaking in it but they entered and then remained unlawfully.  And I think that helped us in that . . . the State conceded that the defendants were there, at least to begin with, lawfully.
>
> And . . . you had . . . young defendants and a young victim and she was letting these boys stay in her apartment  and she worked as a waitress . . . .  And it was going to be . . . let the jury kind of surmise that when boys and girls get together and maybe there is a little alcohol . . . that maybe a little sex is going to be involved.
>
> Additionally, we had the problem with the statement that we knew was going to come in in which the defendant admitted that he had had sex with the girl.  . . .  We knew there was going to be testimony that he had admitted having sex.
>
> [B]eing forced to overcome that, I think you lose credibility with the jury when you try to dispute every fact and sometimes you have to concede some so that the jury can say . . . They are being honest with us about that and, yes, it's reasonable to believe that boys and girls get together and alcohol is involved and maybe there is a little sex.  And really hoping that the jury would kind of discount the rape and the burglary aspect.  And the reason being, I kind of tried to get them to concentrate on the robbery aspect.
>
>              . . .
>
> In Alabama if the intent to steal is formed after the homicide, it cannot be a capital offense.  And clearly, I think one could argue that certainly this was their friend and . . . I think that you could kind of allege by innuendo that she allowed them to have the vehicle or borrow

> the vehicle.  And if there was a homicide, it wasn't that I'm going to
> rob and during the course of this robbery I'm going to kill.

(Boudreaux Depo. at pp. 43-35.)  Counsel agreed that the "essential theme of
the defense was maintaining to the jury that there was a substantial number of
. . . reasonable doubts and . . . ask[ing] the jury not to convict . . . Christopher
Brooks, based on circumstantial evidence."  (*Id*. at 12.)

Prior to settling on this strategy, the record demonstrates that counsel
sufficiently investigated the case by, among other things, meeting with their
client, examining the State's evidence, meeting with the prosecutor, and
talking to witnesses expected to testify on behalf of the State.  In rejecting, on
direct appeal, a claim that trial counsel failed to sufficiently investigate the
case, the Alabama Supreme Court found as follows:

> In support of his argument, the defendant argues that his trial
> counsel failed to properly investigate the case in preparation for trial.
> The defendant argues that trial counsel should have investigated the
> background of the defendant and the circumstances of the crime; that
> counsel should have hired a private investigator and DNA experts to
> contest the State's evidence; and that counsel should have contacted
> character witnesses and witnesses named in the police report, but did
> not.  At the hearing, trial counsel testified that his trial preparation was
> adequate.  Counsel had complete access to the prosecutor's files;
> counsel interviewed all essential witnesses; counsel, as a matter of trial
> strategy, agreed with the prosecutor that during the sentencing phase of
> the trial he would not present testimony that the defendant was of a
> good character, in exchange for the prosecutor's agreement not to
> present victim-impact evidence; and counsel chose not to use DNA
> experts to contest the semen sample, because the defendant had
> admitted to having had intercourse with the victim on the night of the
> murder, and, instead, argued that no rape had occurred.  Counsel
> testified that the psychiatric evaluation of the defendant showed no
> evidence of emotional, mental, or substance abuse problems; and that
> the "phantom defendant" defense was not a viable alternative, given
> that the defendant's bloody fingerprints were found in the victim's
> apartment.

*Ex parte Brooks*, 695 So.2d 184, 191 (Ala.1997).  When asked specifically why he did not enlist the assistance of an investigator to help with preparation for trial, counsel testified as follows:

> I didn't request any myself and I wasn't aware of anything that I thought an investigator could do to aid in the case.  I don't particularly care for investigators, and unless you have a very specific result oriented task to give them, I prefer to find out things on my own.

(SR. 50.)  Counsel's investigation and preparation were sufficient.  Moreover, the decision not to retain an investigator was not "outside the wide range of professionally competent assistance."

> The record reveals that other theories and approaches were considered by trial counsel prior to settling on the theme described above.  For example, over the objection of Brooks – and despite the fact that nothing in their personal interaction indicated the existence of any mental health problems – counsel had Brooks evaluated by mental health professionals on the chance that something useful might result. . . .  Counsel additionally considered injecting the possibility of a "phantom defendant" into the proceedings, but justifiably – based upon the overwhelming evidence to the contrary – did not think such a defense would be reasonable.  Moreover, counsel was concerned that such an approach would damage any credibility the defense hoped to gain in the eyes of the jury.  Regarding this specific issue, counsel testified as follows:

> > An additional problem was that while that might be an interesting angle to have a phantom defendant, . . . the nature of the evidence in this case . . . was such that a phantom defendant probably wouldn't have been a viable defense, especially with the defendant's bloody fingerprints on the body, etc., and, of course, his post-Alabama, his – the things that he was shown to have done in Georgia.

(SR. 61-62.)

> . . .

16

There is no doubt that counsel did not exhaustively investigate every single detail and aspect of this case. The law, however, does not require such and, in fact does not even require an investigation into every possible theory of defense. Moreover, because the chosen theory of defense was reasonable, "it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of [a reasonable doubt defense] was not a deliberate choice between [it and some other course]." *Chandler v. United States*, 218 F.3d 1305, 1316, n.16 (11th Cir. 2000)(en banc). The "inquiry is limited to whether [the chosen defense] might have been a reasonable one." *Id*., *citing Harich v. Dugger*, 844 F.2d 1464, 1470-71 (11th Cir. 1988) (en banc); *Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995). In the Court's opinion, it was reasonable. Brooks, who has the burden of proof in these proceedings, has failed to prove otherwise.

Plainly, counsel was restricted in the manner in which they could credibly defend Brooks by the overwhelming evidence of his guilt. The decision to attempt to inject reasonable doubt at every opportunity – primarily in regard to the burglary, rape, and robbery aspects of the case – and to emphasize the circumstantial nature of the State's evidence was not "outside the wide range of professionally competent assistance." Again, the Court finds that the pretrial investigation conducted by trial counsel was more than sufficient. The failure to discover evidence supporting any other viable defense was not due to a lack of effort on the part of trial counsel. Rather, it was a direct result of the overwhelming evidence that definitively established Brooks' involvement in the offense.

(Vol. 27, tab 62 at 42-50.)

On direct appeal, Brooks's appellate counsel argued that his trial counsel had been ineffective in their preparation for trial. *See Ex Parte Brooks*, 695 So. 2d 184, 191 (Ala. 1997). The Alabama Supreme Court held, "Having reviewed counsel's performance with a strong presumption of reasonable professional assistance, *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 694, we conclude that counsel's investigation of the case was reasonable and that the particular way [they] exercised [their] judgment did not suggest

17

ineffective assistance of counsel." *Ex parte Brooks*, 695 So. 2d at 191.  This finding is not unreasonable.

Nothing that Brooks has argued or pointed to in the record compels a different result. Trial counsel in this case "investigated the case and examined the pros and cons of the available defenses – defenses that were greatly diminished by the overwhelming evidence of Brooks's guilt.  . . .  Based on the facts in this case, we cannot say that trial counsel's performance fell outside the wide range of professional conduct." *Brooks v. State*, 929 So. 2d 491, 504 (Ala. Crim. App. 2005)(internal citation omitted).  Because his trial counsel's performance was not outside the acceptable range of professional conduct, the conduct of his appellate counsel was not unreasonable regarding her preparation and presentation of this issue.

Therefore, the court will reject the Report and Recommendation to the extent it asserts that this claim is due to be dismissed based on Rule 2 of the rules Governing Section 2254 Cases.  However, for the reasons set forth above, the court finds this claim is without merit; therefore, the court will deny Brooks's request for relief on this ground.[5]

---

[5]In his discussion of this claim, Brooks argues that the trial court was without jurisdiction to decide his Motion for New Trial because the Motion was untimely filed. (Doc. 37 at 6.)  Therefore, he contends that his claims of ineffective assistance of trial counsel, raised in his Motion for New Trial, "were not properly before the Court of Criminal Appeals for review" in his direct appeal and were not procedurally barred in his Rule 32 proceeding.  (*Id.*)  This argument is without merit.

*Ex parte Jackson*, 598 So. 2d 895 (Ala. 1992), established a procedure for allowing newly-appointed appellate counsel to file a Motion for New Trial after the trial transcript was

> **b.   Appellate counsel was ineffective during the appeal phase because she failed to adequately research, prepare, raise and argue trial counsel's ineffectiveness during the penalty phase of petitioner's trial, particularly their "failure to investigate, discover, and present mitigating evidence," (doc. 18 § C.1 ¶¶ 78-86; doc. 35 at 8), and appellate counsel was ineffective for failing to adequately**

prepared.

> [I]f the trial court appoints new counsel to represent the defendant on appeal, the trial court shall note that fact on the case action summary sheet, and shall also note that the time within which to file a motion for a new trial is extended in such case, provided the following occurs:  If newly appointed counsel files a motion with the court within 14 days after [her] appointment, requesting that the running of the time within which to file a motion for a new trial be suspended until such time as the reporter's transcript is prepared and filed, then in that event, the 30-day period within which to file a motion for a new trial shall be computed from the date the reporter's transcript is filed, which date shall be entered on the case action summary sheet, rather than from the date of the pronouncement of sentence . . . .

598 So. 2d at 897.

Although the trial court required trial counsel to file a Motion for New Trial, it "relieved [trial counsel] for good cause shown" on November 12, 1993.  (Vol. I at 14.)  On December 17, 1993, trial counsel filed a Motion for New Trial and the trial court appointed appellate counsel to represent Brooks on Motion for New Trial and on direct appeal.  (*Id.* at 17.)  The trial court noted on the Case Action Summary:

> Ms. Vinson [appellate counsel] has requested that she be permitted to supplement Motion for New Trial after careful review of the court reporter's transcript of the trial proceedings – request is granted.  Thus, "supplemental" Motion for New Trial may be filed within thirty days from date court reporter's transcript is filed.

(*Id.*)  The court finds that the Motion for New Trial, as supplemented by appellate counsel, was filed within the time allowed by Alabama law.  Brooks's argument that the trial court did not have jurisdiction to entertain the Motion for New Trial is without merit.

19

>**research, prepare, raise and argue trial counsel's ineffectiveness during the sentencing hearing before the court, particularly because of their "failure to investigate and present mitigating evidence," (doc. 18 § D.5; doc. 35 at 8).**

Petitioner objects to the Report and Recommendation's finding that these issues were not pled with sufficient particularity.  (Doc. 37 at 10-11.)  However, he does not seek to supplement these issues with citations to the record.  (*Id*.)  Instead, he argues:

>[S]ince there was some redundancy in the way Mr. Brooks' petition was pled, there was a great deal of overlap among his claims for relief.  Within the four corners of Mr. Brooks' pleadings there is sufficient particularity to warrant discovery and a hearing as well as the relief from his conviction and sentence.  This writer thinks that a review of the above issues as pled, supplemented by these objections will cure any defects in the pleadings that might exist.  As an aid to the Court, Issue A.4 above and Section IV of the Report, Issue A, D and E should address any deficiencies in the pleading of the above claims.  As indicated in the Magistrate Judge's Report, they will not be repeated here in an effort to achieve brevity.

(*Id*.)

The court notes that Issue D.5. states simply, "See C.1. Supra."  Therefore, the court finds that this is due to be dismissed on the ground it does not state a claim for relief.

As to Issue C.1., the court finds that this issue is duplicative of a number of other issues related to Brooks's contention that his appellate counsel was ineffective based on her failure to properly prepare and present the issues of his ineffective trial counsel based on trial counsel's failure to investigate mitigating evidence.  For example, Issue C.2. claims that trial counsel was ineffective for failing to investigate and present mitigation evidence regarding the fact that Brooks was an alcoholic and he was intoxicated at the time of the murder.  (Doc.

18 § C.2..)  Issue C.5 alleges that trial counsel was ineffective for failing to present

mitigation evidence including a number of individuals will to testify as to his good character.

(*Id*. § C.5.)  To the extent that Brooks contends his trial counsel was ineffective for failing

to investigate and present some other form of mitigating evidence, such claim is not before

the court.

Therefore, the court will dismiss issues C.1. and D.5.

**2.  Procedural default**

The Report and Recommendation found the following issues were procedurally

barred:

> Appellate counsel was ineffective during the appeal phase due to inadequate and incompetent investigation and presentation of the issues which were raised on appeal –
>
> > 1.   The prosecutor's remarks in closing argument to the jury during the guilt phase were improper and extremely prejudicial as an impermissible comment on petitioner's silence. (Doc. 18 § F.1; doc. 35 at 8-9.)
> >
> > 2.   The State peremptorily struck prospective jurors based on gender, race and employment status in violation of Mr. Brooks's rights. (Doc. 18 § F.2; doc. 35 at 8-9.)
> >
> > 3.   The State failed to establish the proper predicate for the admission of DNA evidence.  [Doc. 18 § F.5; doc. 35 at 8-9.)

The Report and Recommendation states:

> Each of petitioner's ineffective assistance of appellate counsel claims found under Section F in the petition is procedurally defaulted and outside the scope of federal review. (Doc. 18, pp. 85-94.)  If the last state court to review a claim states clearly and expressly that its judgment regarding that claim rests

21

on a procedural bar and that bar provides an adequate and independent state ground for denying relief, then federal review of a petitioner's claim is barred by the procedural default doctrine. *Johnson* [*v. Singletary*], 938 F.2d [1166,] 1173 [(11th Cir. 1991), *cert. denied* 506 U.S. 930 (1992)]; *Bailey* [*v. Nagle*], 172 F.3d [1299,] 1305 [(11th Cir. 1999)].   Roman numeral V in the petitioner's collateral appeal brief to Jefferson County Circuit Court concerned the ineffective assistance of counsel "due to inadequate investigation and presentation of the issues raised on appeal." (R. Vol. 12, R-35, pp. 160-61.) The Jefferson County Circuit Court found that those claims failed to comply with the specificity requirements of Rule 32.6(b) of the Alabama Rules of Criminal Procedure.  (R. Vol. 13, R-39, pp. 296-97.)  Petitioner has not highlighted any curative attempt to amend those claims or comply with the rules.  (*See* Doc. 29, pp. 54-62.)  As a part of its review, the Alabama Court of Criminal Appeals ratified the Jefferson County Circuit Court's use of Rule 32.6(b).  (R. Vol. 27, R-63, p. 21.)  The petitioner's attempt to reassert these claims in his petition as Section F is now forbidden by procedural default. (Compare R. Vol. 12, R-35, pp. 160-61, and R. Vol. 24, R-53, pp. 139-50, with Doc. 18, pp. 85-94, and Doc. 29, pp. 54-61.)   Brooks' unsupported counter-argument that "the substantive elements of the claim are procedurally eligible for this court's review because each was fairly presented and adjudicated on the respective merits in petitioner's direct State Court appeal" is unpersuasive.  (Doc. 29, pp. 55-56.)

(Doc. 35 at 8-9.)  Brooks argues that his claims in Section F of his Amended Petition[6] were sufficiently pled, and, therefore, "the dismissal of [these] claim[s] by the trial court was an improper application of a procedural bar which does not foreclose review in Federal Court." (Doc. 37 at 16.)

"The habeas statute generally requires a state prisoner to exhaust state remedies before filing a habeas petition in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 92 (2006)(citing 28 U.S.C. §§ 2254(b)(1), (c)).  "This rule of comity reduces friction between the state and

---

[6]Section F are Brooks's claims  that "appellate counsel was ineffective during the appeal phase due to inadequate and incompetent investigation and presentation of the issues which were raised on appeal."  (Doc. 18 at 85.)

22

federal court systems by avoiding the unseemliness of a federal district court's overturning a state-court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *Id*. (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)(internal quotations omitted) . Therefore, "[o]ut of respect for the finality of state-court judgments[,] federal habeas courts, as a general rule, are closed to claims that state courts would consider defaulted."   *House v. Bell*, 547 U.S. 518, 522 (2006).

> ### a. Issue F.1. – The prosecutor's remarks in closing argument to the jury during the guilt phase were improper and extremely prejudicial as an impermissible comment on petitioner's silence. (*See* doc. 18 § F.1; doc. 37 at 12-17.)

The Alabama Court of Criminal Appeals held, "The circuit court correctly denied relief on [this] claim[] because Brooks's appellate counsel . . . was not questioned as to why she declined to raise [this] specific issue[] in her appellate brief."[7] *Brooks v. State*, 929 So. 2d at 497-98.   The court also noted that the underlying claim – whether trial counsel's performance was deficient in failing to object to the prosecutor's allegedly improper comment on Brooks's right to remain silent – had been raised and rejected on direct appeal.[8]

---

[7]The circuit court denied Brooks's claim that his trial counsel were ineffective on the ground that it had been "raised or addressed at trial," and that it "could have been but was not raised on appeal."  (Vol. 27, tab 62 at 11, 18 [citing Ala. R. Crim. P. 32.2(a)(2) and (5)].)

[8]Addressing the underlying claim on the merits, the Alabama Supreme Court held:

> Comments by a prosecutor on a defendant's failure to testify are highly prejudicial and harmful, and courts must carefully guard against a violation of a defendant's constitutional right not to testify.  This Court has held that comments by a prosecutor that a jury may possibly take as a reference to the defendant's failure to testify violate Art. I, § 6, of the Alabama Constitution of

1901. Additionally, the Fifth and Fourteenth Amendments of the United States Constitution may be violated if the prosecutor comments upon the accused's silence. Under federal law, a comment is improper if it was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. The federal courts characterize comments as either direct or indirect, and, in either case, hold that an improper comment may not always mandate reversal.

Consistent with this reasoning, Alabama law distinguishes direct comments from indirect comments and establishes that a direct comment on the defendant's failure to testify mandates the reversal of the defendant's conviction, if the trial court failed to promptly cure that comment. On the other hand, "covert," or indirect, comments are construed against the defendant . . . . Thus, in a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error, there must have been a virtual identification of the defendant as the person who did not become a witness. A virtual identification will not exist where the prosecutor's comments were directed toward the fact that the State's evidence was uncontradicted, or had not been denied. Yet, in such circumstances, it becomes important to know whether the defendant alone could have provided the missing evidence.

A challenged comment of a prosecutor made during closing arguments must be viewed in the context of the evidence presented in the case and the entire closing arguments made to the jury – both defense counsel's and the prosecutor's. Here, defense counsel argued that the State's evidence, because of its circumstantial nature, was insufficient to prove beyond a reasonable doubt that the defendant had committed the crimes. Defense counsel insisted that the evidence created a reasonable hypothesis of the defendant's innocence because there were unidentified fingerprints, unidentified pubic hair, and unidentified semen at the crime scene, which, defense counsel contended, suggested that another person had committed the crimes. In rebuttal, the State commented upon the fact that defense counsel had not presented any evidence in support of this contention and had failed to contradict the State's evidence. The prosecutor highlighted the overwhelming evidence implicating the defendant as the perpetrator of the crimes and, in this context, argued that defense counsel's contention was hollow.

Under the particular facts of this case, we cannot find that the

*Id.* at 498 and n. 4 (citing *Ex Parte Brooks*, 695 So. 2d  184, 188-90 (Ala. 1997); *Brooks v. State*, 695 So. 2d 176, 179 (Ala. Crim. App. 1996)).  The court also noted that Brooks's claim that "the claims raised by appellate counsel on direct appeal were inadequate and incomplete" had been dismissed and were not amended in accordance with the circuit court's order; therefore, the claim that appellate counsel was ineffective with regard to the claims she raised on appeal was properly dismissed.  *Id.* at 513-14.

Brooks argues, "The claim that Mr. Brooks's rights were violated due to the prosecutors' comments on the fact that Mr. Brooks did not testify . . . was sufficiently pled.." (Doc. 37 at 12 [citing Tab 35 at 18-19].)  However, this claim was not denied based on an insufficient pleading alone.

---

prosecutor's statements were directed toward the defendant's silence.  When viewed in the proper context, it is clear that they were a response to defense counsel's characterizing the circumstantial nature of the State's evidence in a way that created a reasonable hypothesis of innocence.  The Court of Criminal Appeals correctly approved the trial court's ruling that the prosecutor had appropriately exercised his right to "reply in kind."  We conclude that, in the context of the evidence and the closing arguments of both the defense and the State, the statements at issue were not a reference to the defendant's failure to testify, but rather were a reply to the insufficiency argument made by defense counsel that the evidence suggested a reasonable hypothesis of the defendant's innocence and that the State had failed to eliminate that hypothesis.  Accordingly, we find no reversible error.  Assuming, however, that the statements constituted an indirect reference, we conclude that the trial court's ameliorative charge to the jury and the overwhelming evidence of guilt rendered that error harmless beyond a reasonable doubt.

*Ex parte Brooks*, 695 So.2d at 188 -190 (internal citations and quotations omitted).

The Alabama Court of Criminal Appeals held that this claim – that appellate counsel was ineffective based on her "inadequate and incompetent investigation and presentation" of this issue regarding the prosecutor's comment on Brooks's silence – is procedurally barred by Alabama's rule that a claim is abandoned if the Rule 32 petitioner fails to present evidence on the issue at the Rule 32 hearing. *Brooks v. State*, 929 So. 2d at 497-98 and n. 4. This procedural bar is not based on the petitioner's Rule 32 pleadings. Rather, this procedural bar is based on the evidence presented at the state's Rule 32 hearing. This procedural bar is "regularly applied and well-established." *Smith*, 550 U.S. at 313; *see Hooks v. State*, CR-04-2220, 2008 WL 3989502, *14 (Ala. Crim. App.  Aug. 29, 2008)(citing *Burgess v. State*, 962 So. 2d 272, 301 (Ala. Crim. App. 2005); *Brooks v. State*, 929 So. 2d 491; *Payne v. State*, 791 So. 2d 383, 399 (Ala. Crim. App. 1999)). Therefore, this court finds this issue  – whether Brooks's appellate counsel was ineffective with regard to her preparation and presentation of the prosecutor's alleged comments of his failure to testify – is procedurally defaulted.

The Report and Recommendation as to this claim will be adopted and this claim will be denied.

### b. The State peremptorily struck prospective jurors based on gender, race and employment status in violation of Mr. Brooks's rights.  (Doc. 18 § F.2.)

On appeal, the Alabama Court of Criminal Appeals held, "The circuit court correctly denied relief on [this] claim[] because Brooks's appellate counsel . . . was not questioned as

to why she declined to raise [this] specific issue[] in her appellate brief." *Brooks v. State*,

929 So. 2d at 497 (citing *Payne*, 791 So. 2d 383).  The court also noted that the underlying

claim – whether "trial counsel's performance was deficient in failing to object to the

prosecutor's use of its preemptory strikes" – had been rejected on direct appeal.[9]  *Id*. at 498

---

[9]Addressing the merits of this claim, the Alabama Supreme Court held:

> The party alleging discriminatory use of a peremptory strike bears the
> burden of establishing a prima facie case of discrimination.  Where, as in this
> case, the trial court requires the opposing counsel to state race-neutral reasons
> for peremptory strikes, without first requiring that a prima facie case of
> discrimination be shown, this Court will review the reasons given and the trial
> court's ultimate decision on the *Batson* motion without any determination of
> whether the moving party met its burden of proving a prima facie case of
> discrimination.  When the trial court has required a party to state reasons for
> the strikes, that party must articulate reasons that are clear, specific, and
> legitimate, that relate to the particular case, and that are nondiscriminatory.
> After race-neutral reasons have been articulated, the moving party can offer
> evidence showing that those reasons are really a sham or pretext.  On appeal,
> the trial court's ruling on the question whether the responding party offered
> legitimate race-neutral reasons will not be overturned unless it is clearly
> erroneous.

> The defendant contends that the reasons offered by the prosecutor were
> not sufficiently race-neutral . . . .  Essentially, [Alabama case law holds] that
> age, employment status, and marital status are not sufficiently race-neutral
> reasons for a peremptory strike, if the prosecutor gives that reason as the sole
> basis for the strike, where that reason is unrelated to the case.  The Court of
> Criminal Appeals, in approving the trial court's denial of the defendant's
> motion, found that the prosecutor had relied upon instability and lack of life
> experience, in addition to the three factors of age, employment status, and
> marital status.  Thus, the court found that the prosecutor had not relied solely
> on those three factors.  The defendant argues that the factors of instability and
> lack of life experience do not add anything to the other three factors; i.e., that
> to speak of instability and lack of life experience is another way to speak of
> age, employment status, and marital status.  We find, however, that the stated
> reasons, taken together, were permissible justifications for strikes used to

27

and n.5 (citing *Ex Parte Brooks*, 695 So. 2d  at 190-91; *Brooks v. State*, 695 So. 2d at 180-81).   The court noted that Brooks's claim that "the claims raised by appellate counsel on direct appeal were inadequate and incomplete" had been dismissed and were not amended in accordance with the circuit court's order; therefore, the claim that appellate counsel was ineffective with regard to the claims she raised on appeal was properly dismissed. *Id*. at 513-14.

Brooks argues that this claim was sufficiently pled and, therefore, was not properly subject to the procedural bar in the state courts.  However, the Alabama Court of Criminal Appeals did not find this claim was procedurally barred based on the fact that Brooks's pleadings were insufficient alone.

As stated above, the Alabama Court of Criminal Appeals held that this claim was procedurally barred because Brooks failed to question his appellate counsel at the Rule 32

---

remove jurors who might have identified with and felt sympathy for the defendant, who was also young, single, unemployed, and ostensibly unstable, and to remove jurors without "life experience," in favor of more experienced jurors, considering the burden posed by a capital murder trial.

Furthermore, the prosecutor's comparable treatment of the jurors of both races is evidence tending to rebut any inference of discriminatory intent. Here, the prosecutor struck two black females and one white male on the basis of age, employment status, marital status, instability, and lack of life experience.  This comparable treatment among jurors of both races suggests that the strikes were race-neutral.  Accordingly, we conclude that the trial court was not clearly erroneous in determining that the jurors were struck for race-neutral reasons.

*Ex parte Brooks*, 695 So.2d at 190-91.

hearing. *Brooks v. State*, 929 So. 2d at 497-98 and n. 5. As set forth above, this procedural

bar is "regularly applied and well-established." *See Smith*, 550 U.S. at 313. Therefore, this

court finds this issue – whether Brooks's appellate counsel was ineffective with regard to

her preparation and presentation of the *Batson* issue – is procedurally defaulted.

The Report and Recommendation as to this claim will be adopted and this claim will

be denied.

### c. The State failed to establish the proper predicate for the admission of DNA evidence. [Doc. 18 § F.5.)

The circuit court found that the issue of whether the State failed to establish the proper

predicate for the admissibility of DNA evidence was procedurally barred as it was raised at

trial and on appeal. (Vol. 27, tab 62 at 17.) The Court of Criminal Appeals held that

Brooks's claim that "the claims raised by appellate counsel on direct appeal were inadequate

and incomplete" had been dismissed and were not amended in accordance with the circuit

court's order; therefore, it held his claim that appellate counsel was ineffective with regard

to the claims she raised on appeal was properly dismissed. *Id*. at 513-14. Brooks claims that

this claim was "pled with the specificity required by Rule 32," and, therefore, it was "not

subject to a procedural bar."

On direct appeal, appellate counsel raised and argued that the state had not established

a proper predicate for the admissibility of the DNA evidence. The Court of Criminal

Appeals held:

Finally, the appellant asserts that the trial court improperly admitted the State's genetic deoxyribonucleic acid ("DNA") evidence.  He argues that the data received from the two companies hired by the State to analyze the DNA evidence in this case, Lifecodes and Collaborative Testing Research Associates, may be tainted because, he says, the results are always perfect and because the State pays those companies for positive results and they would lose that income if their test results did not achieve positive results every time.  Further, the appellant casts doubt upon the database used in the testing because, he says, 120 samples seems like too low a figure to support a population study.

Those allegations have nothing to do with satisfying the three prongs of the test for admissibility of DNA matching and population frequency statistics evidence promulgated in *Ex parte Perry*, 586 So.2d 242 (Ala.1991).  The appellant's allegations question the weight and not the sufficiency of the evidence.  Notably, the appellant failed to object to the introduction of this evidence at trial; therefore, it is subject to plain error review.

This court sees nothing in the record to indicate that the State's DNA expert witness, Faron Brewer, failed to address the three prongs of the *Perry* test.  That test is as follows:

> "I.  Is there a theory, generally accepted in the scientific community, that supports the conclusion that DNA forensic testing can produce reliable results?

> "II.  Are there current techniques that are capable of producing reliable results in DNA identification and that are generally accepted in the scientific community?

> "III  . . . . did the testing laboratory perform general accepted scientific techniques without error in the performance or interpretation of the tests?"

586 So.2d at 250.

Mr. Brewer, a forensic serologist who works in the area of DNA testing for the Alabama State Department of Forensic Sciences, discussed the scientific community's general acceptance of DNA testing, the reliability of DNA test results, and the reliability of the procedures used in this particular

case during his testimony before the jury.  We have reviewed the testimony admitted by the trial court regarding the DNA evidence, and we find that the expert witness, Mr. Brewer, did an excellent job of satisfying the *Perry* test. Further, the appellant does not support his allegations regarding the allegedly tainted results by the testing companies nor his criticism of the size of the population database used in this analysis with any evidence or legal argument. Therefore, this issue is without any merit.

*Brooks*, 695 So. 2d at 182-83.  The Alabama Supreme Court affirmed this holding.  *Ex parte*

*Brooks*, 695 So. 2d 184, 193 (Ala. 1997)("We agree with the Court of Criminal Appeals that

the record fully supports the State's argument that it had satisfied the third prong of the

[*Perry*] test.").   The court finds that any claim based on the improper predicate is

procedurally barred because the issue was raised and addressed on direct appeal.

In his petition before this court, Brooks argues that the admission of the DNA

evidence violated his Sixth Amendment right to confront the witnesses against him.   He

states:

> 164.  Mr. Brooks was denied his Sixth Amendment right to confront witnesses when the evidence was admitted based on a testing process conducted in large part by an individual who did not testify at trial.  *Barnes v. State*, 704 So. 2d 487 (Ala. Crim. App. 1997).  This was reversible error.  The DNA evidence was crucial to the state's case and devastating to the defense; there could not have been a conviction of capital murder arising out of a rape without it.  The State Court . . . adjudication of this claim resulted in a decision that was contrary to, and involved an unreasonable application of, clearly established United States Supreme Court precedent.

(Doc. 18 ¶ 164.)  Although this claims was raised in the Rule 32 petition, (*see* Vol. 12, tab.

35 at 177), this was not addressed by the circuit court or the Court of Criminal Appeals.

However, because this claim is without merit, the court will not address the exhaustion issue.

Brooks's Sixth Amendment right to confront the witnesses against him was not violated by the admission of the results of the DNA test through Brewer.

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Amendment contemplates that a witness who makes testimonial statements admitted against a defendant will ordinarily be present at trial for cross-examination, and that if the witness is unavailable, his prior testimony will be introduced only if the defendant had a prior opportunity to cross-examine him.

*Giles v. California*, 128 S. Ct. 2678, 2682 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68 (2004)).

The testimony that Brooks contends violates the confrontation clause was Brewer's testimony that his supervisor begins the testing process by "cut[ting] the samples, plac[ing] them in a tube and then lys[ing] them so the DNA could be extracted." (*See* Vol. 6 at 830.) The conduct of Brewer's supervisor in cutting swatches and placing them in test tubes was not "testimonial." *See Davis v. Washington*, 547 U.S. 813, 828 (2006)(holding that a 911 caller's statement to operator was not testimonial because "[s]he simply was not acting as a witness; she was not testifying[; and] What she said was not a weaker substitute for live testimony at trial")(internal citations and quotations omitted); *see also United States v. Brown*, 441 F.3d 1330, 1360 (11th Cir. 2006)(noting that overheard conversation was not "testimonial" because "not made under examination, was not transcribed in a formal document, and was not made under circumstances leading an objective person to reasonably

believe the statement would be available for use at a later trial").  Therefore, Brooks did not

have a constitutional right to confront Brewer's supervisor.

Because Brooks had no Sixth Amendment right to confront Brewer's supervisor, his

claim that this appellate counsel was ineffective in her presentation of this issue on appeal

is due to be denied.

Any claim based on the alleged improper predicate for the admission of DNA results

is procedurally barred as set forth in the Magistrate Judge's Report and Recommendation.

Brooks's claim that he was denied his Sixth Amendment right to confront witnesses is

without merit and provides no basis for habeas relief.

### 3.  Substantive claims

The Report and Recommendation discusses a number of substantive claims.  (*See* doc.

35 at 9-16.)  Of these claims, petitioner concedes issue § A.7.  (Doc. 37 at 28-29.)   He

objects to the Report and Recommendation regarding the remaining claims.

#### a. Ineffective assistance of counsel regarding alcoholism and intoxication issues – Claims §§ A.1., C.2., and D.4.

The Report and Recommendation provides:

> The petitioner claims the ineffective assistance of both trial and appellate counsel for failure to raise issues regarding a voluntary intoxication defense.  (Doc. 18, pp. 10-12, 80; Doc. 29, pp. 14-18, 53.)  Brooks observes that "[w]hen there is evidence of intoxication and the crime charged requires a specific intent, an instruction on the effects of intoxication and how it relates to any lesser-included offense should be given."  (Doc. 18, p. 10.)  The record before the court, however, fails to support a finding that Brooks was legally intoxicated at the time of the murder or any inference that either trial or appellate counsel was legally deficient for failure to raise the defense.

Both the Jefferson County Circuit Court and the Alabama Court of Criminal Appeals found that Brooks failed to meet his burden of proof regarding this claim and this court agrees in full with the well-reasoned analyses of those courts.[10] (R. Vol. 27, R-62, pp. 53-56; R. Vol. 27, R-63, pp.

---

[10]The Court of Criminal Appeals held:

Specifically, Brooks argues that Vinson should have argued that trial counsel was ineffective for failing to pursue an intoxication defense.

The record of the Rule 32 proceedings shows that Boudreaux, one of Brooks's trial counsel, testified by deposition in lieu of appearing at the Rule 32 evidentiary hearing. Rule 32.9(a), Ala. R. Crim. P. Boudreaux said that he had represented approximately 12 defendants charged with capital murder and that two of those defendants had been sentenced to death. Boudreaux was not questioned as to why he chose not to raise an intoxication defense.

Gomany, Brooks's other trial counsel, testified at the evidentiary hearing that he had practiced law for 26 years, that approximately 80 percent of his law practice was criminal-defense work, that he had worked in the district attorney's office, and that as a criminal-defense attorney had represented about 10 or 12 defendants charged with capital murder. He said that the evidence against Brooks was overwhelming and that trial counsel's strategy was to cast doubt on the evidence. Gomany did say in response to a question posed by the assistant attorney general that *he had never seen an intoxication defense succeed in Jefferson County*. However, defense counsel did not question either attorney as to why counsel chose not to pursue an intoxication defense at trial.

The circuit court made the following findings on this issue:

"Neither of Brooks's trial attorneys was asked why they did not pursue the issue of alcoholism or intoxication on the night of the crime. 'An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of [competent representation]. Therefore, "where the record is incomplete or unclear about [counsel's] actions, [the Court] will presume that [they] did what [they] should have done, and that [they] exercised reasonable professional judgment."' *Chandler v. United States*, 218 F.3d 1305, 1314 n. 15 (11th Cir. 2000) (en banc), *quoting Williams v. Head*, 185 F.3d 1223, 1228 (11th Cir. 1999); *see*

34

> *also Grayson v. Thompson*, [257 F.3d 1194, 1216] (11th Cir. 2001)
> (stating that 'we must indulge the strong presumption that counsel's
> conduct was reasonable in the absence of evidence regarding his
> reasons for failing to raise such a challenge'). It may very well be that
> trial counsel did not pursue evidence of alcoholism and intoxication
> because information received from Brooks did not indicate the
> existence of any such evidence. This possibility becomes probable
> when the defendant's self-reports regarding the issue – as reflected by
> the record – are considered. For example, the pre-sentence report
> reflects that Brooks and his mother relayed information regarding his
> alcohol use that directly contradicts the evidence presented during these
> proceedings. Specifically, the relevant portion reads as follows: 'He
> reported to have used marijuana on only one occasion at the age of 16.
> He reports to be a casual drinker. His mother had no information
> regarding any type of drug use history and ***stated that her son does
> drink on a social basis***.' Dr. Rosecrans's evaluation demonstrates that
> Brooks reported '***no history of drug or alcohol abuse***' and that he
> '***engaged only in social drinking***.' There has been no evidence
> presented that Brooks informed his attorneys of anything to the
> contrary."

(C.R. 62-64)(emphasis in original). Brooks did not pursue this claim at the
evidentiary hearing; therefore, we presume that counsel's performance was
reasonable. See *Grayson v. Thompson*, 257 F.3d at 1218.

Moreover, the record of the trial proceedings reflects that Brooks
reported that he was a casual drinker. Brooks's mother said the same.
Counsel also noted at the hearing on the motion for a new trial that Brooks's
mother was not cooperative and that she did not appear at trial until the middle
of the trial. As we stated in *Jenkins v. State*, [972 So. 2d 111, 137-38] (Ala.
Crim. App. 2004), quoting *Commonwealth v. Bond*, 572 Pa. 588, 609-10, 819
A.2d 33, 45-46 (2002):

> "'The reasonableness of counsel's investigation and preparation
> for the penalty phase, of course, often depends critically upon the
> information supplied by the defendant. *E.g. Commonwealth v. Uderra*,
> 550 Pa. 389, 706 A.2d 334, 340-41 (1998)(collecting cases). Counsel
> cannot be found ineffective for failing to introduce information
> uniquely within the knowledge of the defendant and his family which

35

11-12.)  This court's review of cited evidence regarding potential intoxication
revealed no significant indication that an intoxication defense would have been
a viable option for Brooks.  (*See* R. Vol. 17, pp. 152-78, 213-232; R. Vol. 20,
pp. 471-74,488-90, 503.)  Especially important in light of the court's
obligation under 28 U.S.C. § 2254(e)(1) is the Jefferson County Circuit
Court's decision to credit the findings and opinions of Dr. King, a psychologist
who testified that he could not claim to know Brooks' level of intoxication at
the time of the murder, over the opinion of Dr. Beidleman, expert witness for
the petitioner, who testified that Brooks was suffering from acute intoxication.
(R. Vol. 27, R-62, pp. 55-56; R. Vol. 27, R-63, pp. 18-19.)  Moreover, the
petitioner has cited to no evidence indicating a failure of counsel to consider
or investigate this defense.  *Strickland v. Washington*, 466 U.S. 668, 690
(1984).  Finally, to the extent that petitioner attempts to assert a claim under
*Hicks v. Oklahoma*, 447 U.S. 343 (1980), the court finds such a claim both
unsubstantiated in the petition and procedurally defaulted for failure to raise
it in state court.

Brooks further argues that his appellate counsel was constitutionally
ineffective for failure to pursue *Strickland* issues related to trial counsel's
decision in the penalty phase not to present evidence of either Brooks'
intoxication at the time of the crime or his alcoholism.  (Doc. 18, pp. 46-48;
Doc. 29, pp. 45, 53.)  For the reasons stated above along with the reasoning
given by the Alabama Court of Criminal Appeals in *Brooks v. State*, 929 So.
2d 491, 507-12 (Ala. Crim. App. 2005), the court holds that the petitioner has
failed to satisfy his burden of proof on this claim.  Brooks has shown no court
decision that involved an unreasonable application of clearly established
federal law under 28 U.S.C. § 2254(d).

(Doc. 35 at 9-10 [footnote added].)

Brooks objects to these conclusions of the Report and Recommendation.  (*See*

*generally* doc. 37 at 18-25.)  He argues that his lack of interaction with trial counsel prior to

is not provided to counsel.'"

We cannot say that counsel's performance fell outside the wide range of
professional conduct.  See *Strickland*.

*Brooks v. State*, 929 So. 2d at 501-02.

36

the proceedings and trial counsel's failure to investigate the claims led to counsel's failure

to argue intoxication.  He contends:

> Here the State court made a factual determination resting in large measure on the findings of the trial court after a hearing on Mr. Brooks' Rule 32 which were adopted by the Alabama Court of Criminal Appeals.  The State court determination focused on the fact that neither of Mr. Brooks' trial counsel were asked why they did not pursue the issue of intoxication on the night of the crime.  An additional basis was the allegation that Mr. Brooks did not self report the fact that he had been drinking prior to the murder. Additional support was in finding more credibility in an expert witness's testimony indicating "I simply do not know how much he drank, at what level he may have been intoxicated or if, in fact he was intoxicated, (R. Vol. 17, pp. 224-225), over that of Dr. Beidleman, who offered his opinion . . . after his evaluation of Mr. Brooks[.] [H]e thought that a short time prior to the murder, Mr. Brooks was acutely intoxicated.  He also testified that this opinion was offered with a reasonable degree of psychological certainty.  (R. Vol. 17, p. 159.)

> Given Mr. Brooks' testimony that he only met with trial counsel once prior to his trial is prima facie evidence that trial counsel did very little to involve Mr. Brooks in the defense of his case. A defendant would have a difficult time providing counsel with information if he is unable to meet with them. Trial counsel and the courts also placed great weight on the fact that defense counsel [thoroughly] reviewed the district attorney's file.

> Contained in that file was the evaluation of Mr. Brooks['] co-defendant Cris Leeper who told Dr. Rosecrans that the night Ms. Campbell was killed that he and Mr. Brooks got drunk.  (Vol. 20, p. 471.)  This information was reinforced in a statement given by Ms. Angela Thurman which was also available to trial counsel.  In a statement given to Columbus police, she said Mr. Brooks told her that the night he and Rob (Leeper) got really drunk and passed out.  (Vol. 20, p. 503.)

> Intoxication as it relates to specific intent crimes and lesser included offenses was not a new theory in 1993. Alabama trial courts had been reversed for years for not giving a voluntary intoxication instruction along with a lesser included charge reflecting a lesser culpable mental state.  And the standard was not that of legal intoxication.  "No matter how strongly the facts may

suggest that the appellant was not so intoxicated at the time he committed the offense that he was incapable of forming the necessary specific intent, the jury should have been instructed on manslaughter as a lesser included offense since there was a reasonable theory from the evidence which would support the position. *McNeill v. State*, 496 So.2d 108, 109 (Ala. Crim. App. 1986). On May 7, 1993, shortly before Mr. Brooks was put to trial, the Alabama Court of Criminal Appeals reversed a conviction for murder and a death sentence on this very issue. "[W]hen the crime charged is intentional murder and there is evidence of intoxication, the trial judge should instruct the jury on the lesser included offense of manslaughter. . . .  This is true regardless of however weak, insufficient, or doubtful in credibility the evidence concerning that offense." *Fletcher v. State*, 621 So.2d 1010, 1019 (Ala. Crim. App. 1993). It is inconceivable that Mr. Brooks' trial counsel would not be aware of this defense to capital murder.

When asked about pursuing an intoxication defense by the State, Mr. Gomany testified that he saw no reason to pursue an intoxication defense because his theory of the case was that Mr. Brooks did not do it. He testified to the State's leading question that a theory of not guilty and intoxication were inconsistent. He also testified that he had never seen a defense of intoxication ever work **except to mitigate**. [R. Vol. 17, p. 199].

Alabama law entitles a defendant to an intoxication defense and lesser included offense if there is a reasonable theory to support the charge even if the defendant denies committing the crime. *Ex parte Myers*, 699 So. 2d 1285, 1290 (Ala. 1997). The fact that Mr. Gomany recognized the importance of intoxication to a mitigation case is instructive because the evidence of intoxication was not used in the penalty phase of the trial. The reasonable explanation for this is [that] he was not aware of the evidence even though it was contained in the District Attorney's case file. Furthermore, while Mr. Gomany may have never seen an intoxication defense work, he should have been aware of the volume of case law on the subject.

In preparing for a death penalty case an attorney has a duty to conduct a reasonable investigation.  The failure to do so may render counsel's performance ineffective.  Under some circumstances an attorney may make a strategic choice not to conduct a particular investigation but a particular decision not to investigate must be directly assessed for reasonableness in all circumstances applying a heavy measure of deference to counsel's judgments. A lawyer's failure to pursue a particular investigation may be reasonable when

a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful. *Dobbs v. Turpin,* 142 F.3d 1383, 1388-1385 (11th Cir. 1998).

Trial counsel's decision to limit [their] investigation to the "open file" made available by the district attorney was unreasonable. (See Vol. 22, tab 52, pp.186-187.)  This is brought clearly into focus by the testimony of the district attorney prosecuting the case.  "My job, as I see it after having reviewed this evidence and becoming familiar with all the facts of this case from the police department, putting together my file is to assemble and marshal all of the evidence which proved that he is guilty of this.  I did not see it as my job to put together a file for defense lawyers . . . ."  (Vol. 16, tab 51, p. 108.)

Mr. Brooks contends that trial counsel failed him in failing to investigate and prepare for his trial.  An investigation would have, among other things, developed the facts necessary to consider an intoxication defense. The failure to utilize this defense was not a strategic decision, it was the result of not knowing it was an option.  Strategic choices made after less than complete investigation are reasonable only to the extent that reasonable professional judgments support the limitations on investigation.  A decision not to investigate must be directly assessed for reasonableness in all circumstances.  *Wiggins v. Smith*, 539 U.S. 510, 533 (2003) quoting *Strickland*.

The murder of Ms. Campbell was as senseless as it was brutal.  Jur[ies] tend to want to make some sense out of things.  Had they heard evidence that Mr. Brooks was intoxicated at the time of the events, there is more than a reasonable probability that the outcome of his case would have been different. The decisions of the Alabama Courts on this issue represented a decision that was an unreasonable application of the facts presented by Mr. Brooks to clearly established Supreme Court law.

(Doc. 37 at 18-25 [emphasis in original].)

The court notes, "Evidence of drug and alcohol abuse is 'a two-edged sword,' and a

lawyer may reasonably decide that it could hurt as much as help the defense."  *Housel v.*

*Head*, 238 F.3d 1289, 1296 (11th Cir. 2001)(quoting  *Tompkins v. Moore*, 193 F.3d 1327,

1338 (11th Cir. 1999), *cert. denied*, 531 U.S. 861 (2000); citing *Waldrop v. Jones*, 77 F.3d 1308, 1313 (11th Cir.1996)); *see, e.g., Newland v. Hall*, 527 F.3d 1162, 1216-17 (11th Cir. 2008). "It is conceivable that undue emphasis on a defendant's intoxication – beyond communication of the fact of intoxication itself – could potentially alienate the jury as an attempt to excuse truly horrendous conduct." *Grayson v. Thompson*, 257 F.3d 1194, 1222 n.14 (11th Cir. 2001).

The circuit court found that, although he had stated in his brief that his intoxication evidence was "[t]he most significant available mitigation evidence," Brooks had not questioned either of his trial attorneys as to "why they did not pursue the issue of alcoholism or intoxication on the night of the crime." (Vol. 27, tab 62 at 62.) Moreover, it noted that Brooks had self reported to be "a casual drinker," and that he had presented "no evidence . . . that [he had] informed his attorneys of anything to the contrary." (*Id*. at 63.) Also, he found "that the facts of [the] case substantially refute[d] any contention that Brooks was intoxicated to the extent found by Dr. Beidleman, a psychologist who [had] testified on behalf of Brooks." (*Id*. at 64.) Therefore, the circuit court found "there [had] been no showing that [trial] counsel was ineffective in relation to evidence of alcoholism and intoxication." (*Id*. at 65.) The Alabama Court of Criminal Appeals affirmed the circuit court's decision. *Brooks v. State*, 929 So. 2d 491, 501-02 (Ala. Crim. App. 2005).

Although reasonable counsel may have differed regarding the presentation of evidence regarding Brooks's intoxication at the time of the murder, this court cannot find that the

Alabama courts' resolution of this issue in light of Supreme Court precedent and considering the record, was unreasonable.  Because trial counsel was not ineffective, appellate counsel was not ineffective for failing to raise this issue.

The Report and Recommendation will be adopted as to this claim and this claim will be denied.

> ### b. Prosecutor comments, regarding his personal opinion and inflammatory remarks, were improper and prejudicial and, alone or together, deprived Brooks of a fair trial.  (Doc. 18 § A.3. at ¶¶ 37-38, 41-42, and 44.)

The Report and Recommendation states:

> Brooks asserts a claim that appellate counsel rendered ineffective assistance because she failed to pursue a *Strickland* claim regarding trial counsel's alleged failure to object adequately to improper remarks by the prosecutor.  (Doc. 18, pp. 8, 15-21; Doc. 29, pp. 14, 23-29.)  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  "At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*.  Finally, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.

> In light of the strong presumption of attorney competence under *Strickland*, the petitioner has failed to persuade the court that appellate counsel rendered ineffective assistance.  A review of the petitioner's briefing reveals only cursory focus on the specific actions or inactions of appellate counsel.  (*See* Doc. 18, pp. 15-21; Doc. 29, pp. 23-29.)  The court strongly agrees with the Alabama Court of Criminal Appeals that the petitioner's argument is undercut by his own failure to adequately question his appellate counsel regarding her representation.  *See Brooks v. State*, 929 So. 2d at 497-98.  Without highlighted specific errors in appellate counsel's tactics, the court cannot find that she was constitutionally ineffective.  Brooks further has not

satisfied his "burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland*, 466 U.S. at 696.

(Doc. 35 at 10-11.)

Brooks concedes his claim based on "comments relating to the derogation of Constitutional Rights." (Doc. 37 at 25.) Also, he concedes the claim based on comments "concerning references to evidence outside the record," as these comments "were probably a justified reply in kind argument by the prosecutor." (*Id*.)

### i. Prosecutor's improper comments of his personal opinion.

Brooks contends that the following statements by the prosecutor are improper statements of the prosecutor's "personal opinion about the case." (Doc. 18 ¶ 37.)

"I certainly know we all understand Mr. Brewer's conclusions and what he found from the examination of DNA." (Vol. 6, tab 10, p. 956).

"Was this an intentional killing? I don't believe there's any question about that and I don't believe that even Mr. Boudreaux is going to suggest to you that there wasn't." (*Id*.at p. 957-958).

"I think that it is apparent there is an intentional killing by somebody." (*Id.* at p. 962.)

"She was intentionally killed and she was intentionally killed by him during each one of these offenses in conjunction with the rape and burglary and robbery for the purpose of his instant gratification." (*Id*. at p. 963.)

"Greed and lust culminated in her death at his hands, not somebody else's, and not for any reason other than rape, robbery and burglary." (*Id*. at p. 965.)

"He's guilty of all three of those counts and that's why he's charged with it." (Vol. 6, tab 12, p. 1009).

"Twelve or fifteen hours after he bludgeoned her to death in her own bed . . . . He bludgeoned her to death to rape her and to rob her." (*Id*. at p. 1015-1016.)

"He is guilty of capital murder, all three counts. That's the truth, that's the justice, and I ask you to do that." (*Id*. at 1017-1018.)

(Doc. 18 ¶ 37.)  Brooks objects to the Report and Recommendation, arguing –

"[T]he law is clear that a prosecutor should never express his personal opinion as to the guilt of the accused as such expression invades the province of the jury." [*Arthur v. State*, 575 So.2d 1165, 1185 (Crim. App. 1990), *cert. denied* 575 So. 2d 1191 (Ala. 1991).]  Moreover, the prosecutor is in error, in exhorting the jury to "do its job," to imply that, in order to do so, it can only reach a certain verdict, regardless of its duty to weigh the evidence and follow the court's instructions on the law.  "[T]hat kind of pressure, whether by the prosecutor or defense counsel, has no place in the administration of criminal justice, see, e.g., ABA Standards for Criminal Justice 3- 5.8[C] and 4-7.8[C] [which provide that a prosecutor and a lawyer, respectively, 'should not use (or make) arguments calculated to inflame the passions or prejudices of the jury']." *Id*.  The prosecutor also cannot imply to the jury that he or his office had already made the judgment that this case, above most other capital cases, warrants the death penalty.  "This kind of abuse unfairly plays upon the jury's susceptibility to credit the prosecutor's viewpoint." [*Id.*]  In addition, "it is wrong to imply that the system coddles criminals by providing them with more procedural protections than their victims." [*Id*. at 1185-86.]

(Doc. 37 at 26-27.)[11]

_____

[11]Brooks also argues:

Theses issues were dismissed by the trial court because Mr. Brooks did not question appellate counsel on her failure to address the issues.  The Court of Criminal Appeals adopted that decision.  As previously discussed, because of the erroneous application of the <u>Jackson</u> bar these errors were attributed to appellate counsel when in fact the analysis should have focused on trial counsel.  Because this ruling cannot be described as a ruling on the merits, this issue should be reviewed de novo.  <u>Romine v. Head</u>, 253 F.3d. 1349, 1365 (11th Cir. 2001)(when there is grave doubt about whether the state court applied the correct rule of governing federal law, § 2254(d)(1) does not apply

The Alabama Court of Criminal Appeals held that Brooks had abandoned this issue because he did not question his appellate counsel during the hearing on his Rule 32 petition. *Brooks v. State* 929 So. 2d at 497-98.  Brooks does not challenge this assertion, except to argue that the issue should be considered on the merits.  (Doc. 37 at 28.)

The Alabama Court held that this issue was procedurally barred because he had failed to present evidence on the issue at the Rule 32 hearing.  *See Brooks v. State*, 929 So. 2d at 497-98.  As set forth above, this procedural bar is "regularly applied and well-established." *Smith,* 550 U.S. at 313.  Therefore, the court finds this issue  – whether Brooks's appellate counsel was ineffective with regard to her preparation and presentation of the claim of ineffective assistance of trial counsel for failure to object to prosecutor's comments regarding his opinion – is procedurally defaulted.

The Report and Recommendation addressed this issue on the merits.  However, the court finds that Brooks is not entitled to habeas relief on this claim as the claim is procedurally defaulted.

### ii.  Prosecutor's inflammatory remarks

Brooks contends that the following statements by the prosecutor were improper inflammatory remarks.  (Doc. 18 ¶ 41.)

---

so we proceed to decide the issue de novo).

(*Id*. at 28.)  As set forth above, *supra* note 5, Brooks's argument regarding the so-called *Jackson* bar is without merit.

The prosecutor said: ". . . it wasn't anybody else in there who saw it except Jo Deann and she can't tell you, she can't tell you.  (Vol. 6, tab 12, p. 1012).

The prosecutor showed the jury the victim's picture at Christmas with her family and then contrasted it with the autopsy photographs.  He said: "She was ugly when he got through with her.  He turned this into this, when he got through.  Her picture from Christmas and her picture after."  (*Id*. at 1014.)

The prosecutor said: "He tore apart this family, destroyed her like she was a throw away person who meant no more to him than stepping on a bug, so he could satisfy his lust and his greed.  He was her judge, her jury and her executioner."  (*Id*. at 1017.)

The prosecutor concluded his argument with these words:  "He took it upon himself and devastated and destroyed this family over here.  Because she was the throw away to satisfy his lust and greed."  (*Id*.)

(Doc. 18 ¶ 41.)

Brooks objects to the Report and Recommendation, arguing –

We caution prosecutors that the introduction of victim impact evidence during the guilt phase of a capital murder trial can result in reversible error if the record indicates that it probably distracted the jury and kept it from performing its duty of determining the guilt or innocence of the defendant based on the admissible evidence and the applicable law.  *Ex parte Rieber*, 663 So.2d 999, 1006 (Ala. 1995).  Victim impact statements are admissible during the guilt phase of a criminal trial only if the statements are relevant to a material issue of the guilt phase.  Testimony that has no probative value on any material question of fact or inquiry is inadmissible.  *Ex parte Crymes*, 630 So.2d 125,126 (Ala. 1993).

. . .

The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.  It is unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.  *United States v. Young*, 470 U.S. 1, 8 (1985).

Particularly troubling are the remarks listed in paragraph 41 . . . . Mr. Brooks cannot agree with the Magistrate Judge's opinion that these are isolated instances. They permeated the prosecutor's closing remarks and were designed to inflame the passions of the jury. And the prosecutor was successful. Despite all the references to the overwhelming evidence of Mr. Brooks' guilt, the capital murder charge was a close case. There was evidence that any sex was consensual. There was no illegal entry into the apartment. And theft after a killing does not support capital murder.

Either individually or cumulatively [these] improper remarks by the prosecutor and trial counsel's failure to object and demand curative instructions may well have inflamed the jury to the point that they were unable to see the circumstantial nature of the case against Mr. Brooks on the capital murder charge and prevent them from a consideration of the lesser included charges they were given to consider. Trial counsel's performance did not meet the standards required by *Strickland*.

Theses issues were dismissed by the trial court because Mr. Brooks did not question appellate counsel on her failure to address the issues. The Court of Criminal Appeals adopted that decision. As previously discussed, because of the erroneous application of the Jackson bar these errors were attributed to appellate counsel when in fact the analysis should have focused on trial counsel. Because this ruling cannot be described as a ruling on the merits, this issue should be reviewed de novo. *Romine v. Head*, 253 F.3d. 1349, 1365 (11th Cir. 2001)[when there is grave doubt about whether the state court applied the correct rule of governing federal law, § 2254(d)(1) does not apply so we proceed to decide the issue de novo).

(Doc. 37 at 25-28.)

The Alabama Court of Criminal Appeals held that Brooks had abandoned this issue because he did not question his appellate counsel during the hearing on his Rule 32 petition. *Brooks v. State* 929 So. 2d at 497-98 (Ala. Crim. App. 2005). Brooks does not challenge this assertion, except to argue that the issue should be considered on the merits. (Doc. 37 at 28; see also, *supra*, notes 3 and 4.)

46

The Alabama Court held that this issue was procedurally barred because he had failed to present evidence on the issue at the Rule 32 hearing. *See Brooks v. State*, 929 So. 2d at 497-98. As set forth above, this procedural bar is "regularly applied and well-established." *Smith,* 550 U.S. at 313. Therefore, the court finds this issue – whether Brooks's appellate counsel was ineffective with regard to her preparation and presentation of the a claim of ineffective assistance of trial counsel for failure to object to prosecutor's inflammatory comments – is procedurally defaulted.

The Report and Recommendation addressed this issue on the merits. However, the court finds that Brooks is not entitled to habeas relief on this claim as the claim is procedurally defaulted.

### c.  Ineffective assistance of counsel regarding Brooks's presence at all phases of the trial.  (Doc. 18 ¶¶ 89-93.)

The Report and Recommendation states:

> Brooks argues that appellate counsel was ineffective for not arguing that trial counsel failed to ensure that Brooks was present at all stages of his capital trial. (Doc. 18, pp. 48-51; Doc. 29, pp. 45-50.)  It appears from the record that Brooks was not present during an hour-long conference held in chambers after the jury returned its guilty verdict.  The Alabama Court of Criminal Appeals, however, addressed this issue, *Brooks v. State*, 929 So. 2d at 512-13, and Brooks has provided no reason to disturb a presumption of his appellate counsel's reasonably effective assistance.  Neither has Brooks proved any prejudice from alleged errors.

(Doc. 35 at 12.)

Brooks argues that he was prejudiced by not being present at the hearing held after the jury found him guilty but before his sentencing hearing.  (Doc. 37 at 29.)  He contends:

It seems that an in chambers discussion with the prosecutor, trial judge and defense counsel discussing the penalty phase of his trial and discussing what if any mitigating evidence is to be presented qualifies as a critical stage in his proceeding.  . . .  Because the decision reached during this meeting was contrary to the strategy Mr. Brooks wanted his trial counsel to pursue, it is more than probable that he was prejudiced by his absence.

(*Id*. at 29-30.)

The Alabama Court of Criminal Appeals found this claim was abandoned because "Brooks did not question his appellate attorney as to why this claim was not raised; therefore, we presume that appellate counsel's performance in this regard was reasonable." *Brooks v. State*, 929 So. 2d at 513.  Brooks has presented no basis for reversing this decision. Therefore, his Petition will be denied as to this issue.

### d.  Ineffective assistance of appellate counsel regarding mitigation evidence

The Report and Recommendation states:

Brooks asserts that appellate counsel should have argued the ineffective assistance of trial counsel for failure to investigate and provide mitigating evidence during the penalty stage of the trial.  (Doc. 18, pp. 52-65; Doc. 29, pp. 43-45.)  Trial counsel allegedly failed to present evidence of Brooks' good character and the fact that others cared about him.  The petitioner, however, has not persuaded the court that the reasoning given by the Alabama Court of Criminal Appeals in *Brooks v. State*, 929 So. 2d 491, 507-12 (Ala. Crim. App. 2005), is misplaced in any way which would allow habeas corpus relief under 28 U.S.C. § 2254(d).  The court agrees that "[t]he record plainly reflects . . . that trial counsel was aware of available 'character' witnesses, but made a strategic decision not to call them."  *Brooks*, 929 So. 2d at 508 (quoting the circuit court opinion).  The court does not find any ineffective assistance of counsel, because this sort of strategic decision is "virtually unchallengeable." *Strickland*, 466 U.S. at 690-91.

(Doc. 35 at 12-13.)

48

The court notes, "It is common practice for petitioners attacking their death sentences to submit affidavits from witnesses who say they could have supplied additional mitigating circumstance evidence, had they been called, or had they been asked the right questions." *Turner v. Crosby*, 339 F.3d 1247, 1279 (11th Cir. 2003)(quoting *Waters v. Thomas*, 46 F.3d 1506, 1513-14 (11th Cir. 1995)). "That other witnesses could have been called or other testimony elicited usually proves at most the wholly unremarkable fact that with the luxury of time and the opportunity to focus resources on specific parts of a made record, post-conviction counsel will inevitably identify shortcomings in the performance of prior counsel." *Waters*, 46 F.3d at 1514. "The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel." *Id*. (quoting *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987), *cert. denied*, 487 U.S. 1241 (1988)), *quoted in Turner*, 339 F.3d at 1279.

In his Objections, Brooks argues, "In the review of this case there has been something of a legal fiction created that Mr. Brooks' trial counsel were aware of available character witnesses but made a strategic decision not to call them. This is simply not what the record reflects." (Doc. 37 at 30.) He states: "Mr. Brooks had no record of violent conduct that the State could have introduced to offset the powerful mitigation evidence that could have been available to Mr. Brooks. A review of the mitigating evidence produced by Mr. Brooks' post

49

conviction counsel, taken as a whole, might well have influenced the jury's appraisal of his moral culpability."  (*Id*. at 38.)

On direct appeal, the Alabama Court of Criminal Appeals held (1) trial counsel was not ineffective for failing to present more mitigation evidence during the sentencing phase, and (2) Brooks failed to demonstrate any prejudice. *Brooks v. State*, 695 So. 2d 176, 181-82 (Ala. Crim. App. 1996).  The court held:

> The appellant contends that his trial counsel was ineffective for failing to present more mitigating evidence at the sentencing phase of the trial.  The only evidence presented in mitigation by the defense during the sentencing phase was the testimony of the appellant's mother.

> This issue was raised by appellate counsel in a motion for a new trial.  The trial court held a hearing on this matter, and the appellant and both of his trial attorneys testified.  After listening to all the evidence, the trial court found that trial counsel had "ably and with distinction zealously represented" the appellant during his trial.

> On appeal, the appellant contends that his trial counsel did not spend enough time with him to explore mitigation evidence, that his trial counsel should have hired an investigator to evaluate his "social history," and that his trial counsel failed to call any character witnesses on his behalf.  He also alleges that his counsel did not tell him that he could testify at the sentencing hearing.

> Trial counsel both testified at the hearing that they talked and met with the appellant on several occasions before trial and that they talked with him frequently during the course of the trial.  They stated that they inquired into the appellant's background and his family and that they asked for information that might be helpful.  They stated that the appellant did not have any suggestions.  After trial counsel received the results of the appellant's psychiatric evaluation, they found no evidence of any mental or emotional problems.  They were not made aware of any substance abuse problems or of any evidence that the appellant had had an abusive or dysfunctional childhood.

Trial counsel stated that although the appellant gave them the names of several possible character witnesses, they decided against calling them, because . . . they thought if they did so the prosecution would put on numerous victim impact witnesses and they obviously believed that the victim impact evidence would hurt the appellant more than the character witnesses' testimonies would help.  Trial counsel also testified that they fully informed the appellant of his right to testify and that they discussed with him the pros and cons of doing so.  According to counsel, the appellant made the decision not to testify but defense counsel agreed with this strategy, particularly because the appellant had a prior conviction.

 "'To prevail on a claim of ineffectiveness of counsel, the petitioner must show (1) that his counsel's performance was deficient and (2) that he was prejudiced by his counsel's performance.  *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).'"  *Worthington v. State*, 652 So. 2d 790, 796 (Ala. Crim. App. 1994), quoting *Cartwright v. State*, 645 So. 2d 326, 329 (Ala. Crim. App. 1994).  Here, the appellant has not established either prong of *Strickland*.

The appellant presented no evidence at the hearing of any mitigating evidence.  We cannot find that counsel's performance was deficient when there is no indication in the record that any evidence of mitigation exists. *Baldwin v. State*, 539 So.2d 1103 (Ala. Crim. App. 1988), cert. denied, 493 U.S. 874, 110 S. Ct. 206, 107 L. Ed. 2d 159 (1989).  While it could be argued that trial counsel failed to explore the character witnesses that the appellant had offered, the appellant did not inform the trial court at the hearing on his motion for new trial of who these witnesses were and what they would testify to.  Further, trial counsel's decision not to put on any character evidence was a strategic decision and one that was probably wise in this case – in light of the fact that there was evidence at the hearing that the state would have produced a lot of victim impact evidence had the appellant presented his character witnesses.  *Ashley v. State*, 606 So.2d 187 (Ala. Crim. App. 1992); *Marshall v. State*, 629 So. 2d 766 (Ala. Crim. App. 1993); *Fortenberry v. State*, 659 So. 2d 194 (Ala. Crim. App. 1994), cert. denied, 516 U.S. 846, 116 S. Ct. 137, 133 L. Ed. 2d 84 (1995).

Further, we cannot say that the appellant suffered any prejudice based on counsel's performance because he failed to demonstrate any evidence of mitigation.  Prejudice cannot merely be alleged; it must be affirmatively proved.  *Duren v. State*, 590 So. 2d 360 (Ala. Crim. App. 1990).  Thus, the

appellant has not shown that there is a reasonable probability that the outcome of his trial would have been different, but for trial counsel's performance. *Baldwin*, *Thompson v. State*, 581 So. 2d 1216 (Ala. Crim. App. 1991), cert. denied, 502 U.S. 1030, 112 S. Ct. 868, 116 L. Ed. 2d 774 (1992).  This issue is without merit.

*Id.*

At the Rule 32 hearing, the circuit court heard the mitigation evidence.  After hearing the mitigating evidence, the circuit court rejected Brooks's *Strickland* claim.  (Vol. 27, tab 62 at 72-74.)  It held:

In determining that death was the appropriate sentence in this case, the Court found the existence of two aggravating circumstances:  (1) that the murder was committed during the commission of a rape, robbery, and burglary, and (2) that the murder was especially heinous, atrocious, or cruel when compared to other capital offenses.  In support of the latter finding, the Court set forth the following:

Dr. Gary Simmons noted an abrasion in deceased's vaginal canal that had hemorrhaged and as noted above the jury found that the deceased had been raped, the Court concurs in the finding of forcible intercourse.

Evidence presented at the guilt and sentencing phases before the jury indicate that the deceased was bludgeoned to death, being struck multiple times in the head with a blunt object, evidence was consistent with a barbell as alleged by the State. Dr. Simmons could not testify as to the order of the blows with reference to their situs on deceased's face and head but stated that the deceased was alive throughout the bludgeoning episode.

Though it is impossible to know when the deceased lost consciousness the forcible intercourse coupled with the repeated bludgeoning of Ms Campbell, in the Court's view, was especially heinous, atrocious or cruel compared to other capital offenses.

52

This was a brutal crime committed against a young woman by someone she had graciously allowed into her home.  ***Nothing*** presented on behalf of Brooks during these proceedings would have outweighed the aggravating circumstances found to exist.  For example, based upon the nature of the crime, the testimony of friends and family regarding Brooks's "nonviolent" nature would not have been effective.  Likewise, any contention that Brooks committed this crime as a result of "acute intoxication" – or any other assertion that he was not in control of himself – is directly refuted by the facts of the case, including his behavior following the murder.

"In sum, [the Court] find[s] no reasonable probability that the balance of aggravating and mitigating circumstances underling [Brooks]'s death sentence would have been different if the judge and jury had heard the [evidence presented during these proceedings]."  *Grayson v. Thompson*, 2001 WL 798633, at *32 (11th Cir. July 16, 2001).[12]  His claim is, therefore, denied.

---

[12]Since the circuit court's Order, the *Grayson* opinion was published as *Grayson v. Thompson*, 257 F.3d 1194 (11th Cir. 2001).  In that case, the Eleventh Circuit held:

In this case, we need not decide whether counsel's performance was in fact deficient because Grayson so clearly fails to satisfy the prejudice prong of the Sixth Amendment analysis.  *See Strickland*, 466 U.S. at 697, 104 S. Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  Under the prejudice prong of *Strickland*, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id*. at 693, 104 S. Ct. 2052.  Instead, "the question is whether there is a reasonable probability that, absent the errors, the sentencer . . . would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."  *Id*. at 695, 104 S. Ct. 2052; *see also Tompkins v. Moore*, 193 F.3d 1327 (11th Cir. 1999); *Dobbs v. Turpin*, 142 F.3d 1383, 1390 (11th Cir. 1998)("Our analysis of the prejudice prong, however, must also take into account the aggravating circumstances associated with Dobbs's case, to determine whether 'without the errors, there is a reasonable probability that the balance of aggravating and mitigating circumstances would have been different.'")(quoting *Bolender*, 16 F.3d at 1556-57); *see also Chandler v. United States*, 218 F.3d 1305, 1328 (11th Cir.2000)("The ultimate question is whether Chandler has shown that any deficient performance prejudiced him such that, without the errors, there is a reasonable probability that the balance of aggravating and mitigating

(Vol. 27, tab 62 at 72-74 [original footnote omitted; footnote and emphasis added].)

On appeal from the Rule 32 hearing, the Court of Criminal Appeals held that appellate counsel was not ineffective for failing to argue that trial counsel had been ineffective at the penalty phase for failing to present evidence of "his good character and the fact that people cared about him." *Brooks v. State*, 929 So. 2d 491, 507 (Ala. Crim. App. 2005.) Also, it held that Brooks could not show prejudice, stating –

> In reviewing Brooks's claim of prejudice under *Strickland* we have independently reweighed the aggravating circumstances that were found in this case against the alleged mitigating circumstances that were not presented at trial. . . . We, like the circuit court, are confident that death was the appropriate sentence in this case and that any of the alleged mitigating evidence that was not presented at trial but that was presented at the Rule 32 proceedings would not have effected the result.

*Id*. at 512.

This court finds that the decision of the Alabama courts on this issue were not unreasonable. The evidence of mitigation primarily consists of testimony from those who knew Brooks prior to December 31, 1992. They testify that he was kind and nonviolent; all express surprise and/or disbelief that Brooks would commit such a violent crime. In light of the circuit court, who also was the sentencing court, that he would not have considered the mitigating evidence to outweigh the aggravating circumstances, the court finds no evidence of prejudice based on trial counsel's failure to present this character evidence resulted in

―――――――――――――

circumstances would have been different.")(Cox, J., specially concurring).

*Grayson*, 257 F.3d at 1225.

prejudice to Brooks.  Moreover, because trial counsel was not constitutionally ineffective, the court finds appellate counsel was not ineffective for failing to raise this claim.

The court adopts the Report and Recommendation as to the claim.  Brooks's Petition regarding this issue is due to be denied.

### e.  Jury instructions

The Report and Recommendation states:

> The petition claims error regarding the burden of proof portions of the trial court's jury instructions, but it is unclear whether Brooks intends a *Strickland* claim in regard to appellate counsel's performance in not addressing trial counsel's failure to object to these instructions or whether Brooks attempts to focus on an underlying error of the trial court.  (See Doc. 18, pp. 12-13; Doc. 29, pp. 18-21.)  The court first observes that neither the Alabama Supreme Court nor the Alabama Court of Criminal Appeals found error with the jury instructions.  *Brooks v. State*, 695 So. 2d 184, 192 (Ala. 1997); *Brooks v. State*, 929 So. 2d 491, 497 n.3 (Ala. Crim. App. 2005); *Brooks v. State*, 695 So. 2d 176, 182 (Ala. Crim. App. 1996).  After a review of the parties' briefing and these opinions, the court is not persuaded that there were any actionable jury instruction errors.  *See* 28 U.S.C. § 2254(d).  To the extent that petitioner attempts to claim errors in portions of the jury instructions which were not raised in state courts, those claims would be procedurally defaulted.
>
> The petitioner has likewise not convinced the court of the merit of any associated ineffective assistance of appellate counsel claim.  State courts below denied relief on this issue because appellate counsel was never questioned regarding her decision not to raise issues regarding trial counsel's failure to object to jury instructions.  *See Brooks*, 929 So. 2d at 497.  Petitioner has not addressed this obstacle in a way that would overcome a presumption of reasonably effective assistance under *Strickland*.

(Doc. 35 at 13-14.)

Brooks argues:

This issue has to do with the trial court failing to instruct the jury that in order to convict, there had to be a unanimous finding beyond a reasonable doubt as to each element of the offense.  If the *Jackson* bar is applied then the issue is precluded from review.  However, as stated above, due to the facts of this case the *Jackson* bar should not be applicable to Mr. Brooks' claims.

(Doc. 37 at 39.)

As set forth above, *supra* note 5, Brooks's argument regarding the so-called *Jackson* bar is without merit.  Therefore, as he concedes, this claim is precluded.

The Report and Recommendation will be adopted and this claim will be denied.

### f.  *Brady v. Maryland*[13] **claim.**

The Report and Recommendation states:

Brooks argues that the State of Alabama failed to supply him with crucial exculpatory and impeachment evidence under *Brady v. Maryland*, 373 U.S. 83 (1963), that his trial counsel were ineffective for failing to raise this issue, and that appellate counsel was also ineffective for failing to raise relevant issues. (Doc. 18, pp. 28-40; Doc. 29, pp. 40-43.)  Specifically, the petitioner claims that the state failed to disclose information regarding both stained clothing found at the victim's home and police interviews with the victim's neighbor, Tony Franklin.  Substantial portions of the amended petition on this issue are taken verbatim from the petitioner's brief to the Alabama Court of Criminal Appeals on collateral appeal. (*Compare* Doc. 18, pp. 28-38, *with* R. Vol. 24, pp. 50-71.)  *See also Brooks v. State*, 929 So. 2d at 497, n.2 ("Brooks' appellate brief is similar to the Rule 32 petition filed in the circuit court.").  Because the petitioner's reply brief provides little additional substance on this issue, (*see* Doc. 29, pp. 40-43), the court appraises the opinion of the Alabama Court of Criminal Appeals as particularly instructive.

After a review of the record regarding the petitioner's underlying *Brady* claim, the court agrees fully with the Alabama Court of Criminal Appeals that even if it could "conclude that the State suppressed evidence in violation of *Brady*, [it] could conceive of no scenario in which this alleged exculpatory

---

[13]*Brady v. Maryland*, 373 U.S. 83 (1963).

evidence would have been material to the case." *Brooks v. State*, 929 So. 2d at 506-07.  The court likewise concurs that, even if evidence was suppressed, "[t]here is no reasonable probability that the result of the proceedings would have been different." *Id.*  The petitioner's failure to meet his burden of proof on the underlying *Brady* claim also dooms any ineffective assistance of counsel claims on these issues because Brooks cannot show prejudice nor overcome a presumption of reasonably effective assistance under *Strickland*, 466 U.S. at 689.  The petitioner has failed to show any unreasonable application of clearly established federal law to justify granting habeas corpus under 28 U.S.C. § 2254(d).

(Doc. 35 at 14-15.)

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). "[T]he three components or essential elements of a *Brady* prosecutorial misconduct claim [are]: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Banks v. Dretke*, 540 U.S. 668, 691 (2004)(quoting *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999)).   To establish prejudice, Brooks must show "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985).

In this case, the circuit court found that this evidence was not suppressed because "discovery in this case was conducted pursuant to an 'open file' policy." (Vol. 27, tab 62 at 77-78.)  The Court of Criminal Appeals held that, even if the clothing and the Franklin tape

were suppressed, Brooks cannot show a *Brady* violation because the evidence was not material. *Brooks v. State*, 929 So. 2d at 506, 507.

### i. Clothes found in the laundry room

The circuit court made the following findings regarding the stained clothing:

> Regarding the police report, testimony at the evidentiary hearing established that the clothing in question was collected by a rookie police officer who, although she did not think it important, was not comfortable making such a decision. Specifically, Officer Mart Abernathy testified that, while searching for possible evidence, she found a pair of jeans and a T-shirt in separate trashcans in the apartment complex laundry room. The clothing was stained and, due to her inexperience, Officer Abernathy decided to collect the items and turn them over to an evidence technician. She did so in an effort to ensure that an informed determination would be made regarding possible evidence. She specifically described her thinking as follows:

>> Well, on the scene I actually believed that they were some sort of an oily substance, and not having seen a lot of clothing items with a lot of blood, I wasn't sure whether it could be blood or not. And I was not going to make that decision based on my position with the police department and my length of service at that time.

> Officer Abernathy even called in a fellow patrol officer to get his input on the matter. Officer Benjamin Sutton testified that he took Abernathy a bag and offered his opinion as follows:

>> I said . . . I don't think it is important but I'm not the one who needs to make that call. . . . I had only been on the job for a year and a half or something, and . . . I wasn't going to make that call.

> He further testified that he thought the stains came from some oil based product and that he did not believe it was blood. Officer Abernathy filed a report documenting that she had discovered the items and that she had turned them over to an evidence technician. John Vaughn, an evidence technician on the scene, testified at the evidentiary hearing and stated that the evidence logs in this case do not include the items discovered by Officer Abernathy.

(Vol. 27, tab 62 at 52-54 [internal citations omitted].)  Nothing in the record demonstrates that the prosecutor actually had possession of these items of clothing.  Therefore, Brooks's *Brady* claim must fail.

Even if this court assumed that the prosecutor had suppressed this evidence, the Alabama courts addressing this issue found that Brooks had not demonstrated that "the outcome of the proceeding would have been different had the evidence been disclosed to the defense." *Bagley*, 473 U.S. at 682.  The Alabama Court of Criminal Appeals held, "Even if we were to conclude that the State suppressed [the clothing] evidence in violation of *Brady*, we can conceive of no scenario in which this alleged exculpatory evidence would have been material to the case, given the overwhelming evidence of Brooks's guilt.  There is no reasonable probability that the result of the proceedings would have been different." *Brooks v. State*, 929 So. 2d at 506 (citing *Jenkins v. State*, 972 So. 2d 111 (Ala. Crim. App. 2004), *aff'd in part and rev'd in part* 972 So. 2d 159 (Ala. 2005); *People v. Barrow*, 749 N.E.2d 892 (Ill.), *cert. denied sub nom. Barrow v. Wells*, 534 U.S. 1067 (2001)).

This court agrees. Therefore, the Report and Recommendation will be adopted and this claim will be denied.

### ii. Franklin tape

The circuit court made the following findings regarding the Franklin tape:

The record reveals that Tony Franklin was [the victim's] friend . . . who, in an attempt to discover why she had not gone to work, climbed on her balcony the day the body was found.  The police subsequently took a statement from Franklin, during which he offered theories of what might have happened.  One

such theory was that the perpetrator climbed onto the balcony and, being unable to open the sliding glass door, crawled through the victim's bedroom window.  Brooks characterizes the statement as follows:

> Mr. Franklin's second statement on January 2, 1993 cannot be overemphasized.  He states that he knew Ms. Campbell slept with the window open and there was ease of access to her second floor [window]; he himself climbed up there on prior occasions.  During the day in question, a few hours before her body was found, he had personally gone there and [seen] that the screen was bent; it look[ed] like it had been "popped off."  The police went there and seized the paint chips because the window sill had blood on it.  This is totally contrary to the State's theory.  It is a different theory, a new theory, *i.e.*, a break-in actually occurred, very likely by a third party.

The Court does not disagree that a "third party" theory would have differed from the State's presentation.  Such a theory is, however, completely unsupported by any evidence and certainly cannot be objectively classified as reasonable considering the facts of this case.

> . . .

A defense based upon the theory that a "third party" broke into the apartment and murdered the victim in this case simply would not have been viable and advancing such a theory certainly would not have altered the outcome.  This is especially true considering counsel's testimony that "a lot of the thrust of [their] defense was not to lose any credibility that [they] had with [the jury]."  For example, counsel would have been forced to take the position that the "phantom defendant," who broke in through the window, took time to clean up following the murder – including wiping up the blood and making up the bed.  Moreover, this individual did so despite the fact that two young men were asleep on the floor in the next room.  Counsel would additionally have had to convince the jury that the "phantom defendant" had taken the time, after committing a brutal and heinous murder, to lock the window and replace the screen.   Leaving aside the extremely damning physical evidence, an explanation would have been required for why, when the body was discovered, all windows and doors of the apartment were locked – including the dead bolt – and Christopher Brooks had the key.  The Court cannot even imagine how counsel might have reconciled their client's proposed innocence with the indisputable fact that he absconded with numerous items belonging to the

> victim.  Indeed, he spent the next few days driving her car, using her credit cards, forging and cashing her checks, and pawning numerous items taken from the apartment.

(Vol. 27, tab 62 at 56-59.)   The Court of Criminal Appeals affirmed the circuit court, holding:

> We can envision no set of facts that would make Franklin's statement material, especially given the overwhelming evidence of Brooks's guilt and the fact that Franklin's alternative theory conflicted with the forensic evidence that had been gathered from the scene of the murder.  We are confident that there is no reasonable probability that the result of the proceedings would have been different had this evidence been made available to the defense.

*Brooks v. State*, 929 So. 2d at 507.

This court finds that the decision of the Alabama courts that the Franklin tape would not have affected the result of the proceedings is not unreasonable.  Therefore, this claim is due to be denied.

Brooks also argues that this court should consider the stained clothing and the Franklin tape together.  He contends that, in considering this evidence, "the what if's multiply" –

> What if someone was on Ms. Campbell's balcony and saw Mr. Brooks and Ms. Campbell having sex[?]  What if they became enraged and entered the bedroom after Mr. Brooks and Leeper passed out and killed Ms. Campbell[?]  What if Mr. Leeper raped and killed Ms. Campbell after she had consensual sex with Mr. Brooks[?]  What if Mr. Brooks awoke the next day and found Ms. Campbell's body and in a panic hid the evidence of the crime[?]

(Doc. 37 at 40-41.)  The fact that the evidence could have been used by defense counsel to argue these scenarios does not alone establish materiality for purposes of proving a *Brady* violation.

> [The] touchstone of materiality is a "reasonable probability" of a different result, and the adjective is important.  The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.  A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression "undermines confidence in the outcome of the trial."  [*United States v.*] *Bagley*, 473 U.S. [667], 678, 105 S. Ct. [3375], 3381 [(1985)].

> . . .  A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. . . .  One does not show a *Brady* violation by demonstrating that some of the inculpatory evidence should have been excluded, but by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.

*Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995)(internal footnote omitted).

The Alabama Court of Criminal Appeals found "no reasonably probability that the result of the proceedings would have been different had [evidence of the stained clothes and the Franklin tape] been made available to the defense."  *Brooks v. State*, 929 So. 2d at 507; *see also id*. at 506.  The circuit court and the appellate court considered the evidence allegedly suppressed as well as trial counsel's testimony regarding their defense strategy, including their rejection of the "phantom defendant" theory.  Based on this evidence and the

controlling case law, this court finds that the decision of the state courts was not unreasonable. Therefore, this claim in Brooks's Petition will be denied.

> **g.   Cumulative effect of ineffective assistance of counsel claims.**

The Report and Recommendation states:

> The petitioner argues that this court should consider the cumulative effect of his ineffective assistance claims when assessing whether his counsel's performance was constitutionally deficient. (Doc. 18, pp. 94-96; Doc. 29, pp. 61-62.) The court has reviewed the record and finds that any errors by counsel do not aggregate to fulfill any part of the *Strickland* test, regardless of how *Strickland* is read regarding a "cumulative effect" for ineffective assistance of counsel. Brooks has not shown that the decision of the Alabama Court of Criminal Appeals was contrary to law in this regard. *See Brooks*, 929 So. 2d at 514.

(Doc. 35 at 15.)

Brooks objects to the Report and Recommendation; he argues:

> Once a constitutionally deficient performance is established, the petitioner must also show prejudice. He must, specifically, "show that there is a reasonable probability that . . . the result of the [sentencing] proceeding would have been different," *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, "if competent counsel had presented and explained the significance of all the available evidence." *Williams*, 529 U.S. at 399, 120 S. Ct. at 1516. Our determination is based on a review of "the entire postconviction record . . . as a whole" and with consideration of all cumulative evidence. *Lawhorn v. Allen*, 519 F.3d 1272, 1296 (11th Cir. 2008). It appears that a cumulative analysis may be an appropriate review in a habeas proceeding. Mr. Brooks objects to the Magistrate Judges finding on this claim and respectfully requests a de novo review.

(Doc. 37 at 42.)

The Alabama Court of Criminal Appeals noted that it could "find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel." *Brooks v. State*, 929 So. 2d at 514; *see also McNabb v. State*, 991 So. 2d 313, 332 (Ala. Crim. App. 2007).  The Alabama Supreme Court, in a footnote, stated:

> A correct statement of the law would be that, when no one instance amounts to error at all (as distinguished from error not sufficiently prejudicial to be reversible), the cumulative effect cannot warrant reversal.  In other words, multiple nonerrors obviously do not require reversal.  The particular wording of the statement quoted here implies that multiple rulings that are, indeed, errors cannot cumulatively cause enough prejudice to require reversal unless at least one of the erroneous rulings is, in and of itself, sufficiently prejudicial to require reversal under Rule 45, Ala. R. App. P.  The correct rule is that, while, under the facts of a particular case, no single error among multiple errors may be sufficiently prejudicial to require reversal under Rule 45, if the accumulated errors have "probably injuriously affected substantial rights of the parties," then the cumulative effect of the errors may require reversal.  See Rule 45, Ala. R. App. P.; see also *Ex parte Tomlin*, 540 So. 2d 668, 672 (Ala.1988)("We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings. See *Blue v. State*, 246 Ala. 73, 80, 19 So. 2d 11, 16-17 (1944); *Jetton v. State*, 435 So. 2d 167 (Ala. Crim. App. 1983)."); *McGriff v. State*, [908 So. 2d 961, 1002 (Ala. Crim. App. 2000)("Because we find no error in the specific instances alleged by the appellant, we find no cumulative error." (Quoting earlier cases; emphasis added.))[, *rev'd* 908 So. 2d 1024 (Ala. 2004)]; *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990)("A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless."); and *United States v. Canales*, 744 F.2d 413, 430 (5th Cir. 1984)("We recognize that the cumulative effect of several incidents of improper argument or misconduct may require reversal, even though no single one of the incidents, considered alone, would warrant such a result.").

*Ex parte Woods*, 789 So. 2d 941, 943 n.1 (Ala. 2001).

The court notes that the Alabama courts did not find any error in trial counsel and/or appellate counsel in the *Strickland* claims that were not procedurally barred. The cumulative effect of these non-errors cannot form the basis for reversing Brooks's conviction. Therefore, this claim in Brooks's Petition will be denied.

## CONCLUSION

For the foregoing reasons and based upon the court's consideration of all the materials in its file, including the Report and Recommendation, the court is of the opinion that the Magistrate Judge's recommendation is due to be adopted in part and modified in part. An Order denying Brooks's Second Amended Petition for Writ of Habeas Corpus, will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 31st day of March, 2009.

*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE