## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

CHRISTOPHER EUGENE BROOKS,   )
                                             )

Petitioner,            )
                                             )

vs.                   )     Case No.  2:05-CV-2357-SLB
                                           )

RICHARD F. ALLEN, Commissioner of  )
the Alabama Department of Corrections;  )
ATTORNEY GENERAL OF THE     )
STATE OF ALABAMA,            )
                                           )

Respondents.           )

## MEMORANDUM OPINION

This case is presently before the court on petitioner's Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure 59(e). (Doc.40.)[1] Upon consideration of the record, petitioner's submission, and the relevant law, the court is of the opinion that the Motion to Alter or Amend the Judgment, (doc. 40), is due to be denied.

## A.  *JACKSON* PROCEDURE

In his Objection to the Magistrate Judge's Report and Recommendation, Brooks argued that the trial court was without jurisdiction to rule on his Motion for New Trial based on *Ex parte Jackson*, 598 So. 2d 895 (Ala.1992):[2]

---

[1] Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

[2] The Alabama Court of Appeals held:

In 1993, when Brooks was tried, the procedure established by the Alabama Supreme Court in *Ex parte Jackson*, 598 So. 2d 895 (Ala.1992), was

Mr. Brooks was sentenced on November 10, 1993.  (Vol. 1, pp. 13, 32[.])
Trial Counsel filed the original motion for new trial on December 17, 1993.
(Vol. 1, pp. 17, 74.)  This motion was filed thirty seven days after sentencing.
"The Jackson procedure required a trial judge to extend a defendant's time for
filing a motion for new trial if the defendant moved for such extension no later
than thirty days after sentencing." *Evans v. State*, 722 So. 2d 778, 780 FN1.
(Ala. Crim. App. 1998)[.]  Mr. Brooks'[s] appellate counsel filed a motion to
stay the filing of an amended motion for new trial on December 30, 1993.
(Vol. 1, pp. 18, 75[.])  This was fifty days after sentencing.  Because Mr.
Brooks'[s] motions for new trial were filed more that thirty days after he was
sentenced, the trial court lost jurisdiction over his case.  See *Evans*[, 722 So.
2d] at 780; *Ex parte Ingram*, 675 So.2d 863, 866 (Ala. 1996)[.]  Since the
filing of a motion for new trial is jurisdictional, the trial court was without
jurisdiction to rule on the motion for new trial and the ineffective assistance
of counsel claims litigated on Mr. Brooks' direct appeal were not properly
before the Court of Criminal Appeals for review.   Nor should any of the
Jackson procedural bars asserted in Mr. Brook[s]'s Rule 32 proceedings be
viewed as valid.

(Doc. 37 at 6.)  This court found the *Jackson* bar issue was without merit.  (Doc. 38 at 18-19

n.5.)  In his Motion to Alter or Amend, "Brooks disagrees that the issue is without merit

because it injects a jurisdictional problem into the fact finding and procedural bars that have

denied him a review of certain issues presented as grounds for relief from his conviction and

---

in effect.  In order to raise a claim of ineffective assistance of trial counsel on
direct appeal appellate counsel could move to extend the time for filing a
motion for a new trial.   Claims of ineffective assistance could then be
presented in the motion for a new trial and reviewed on direct appeal. In 1996,
the Alabama Supreme Court reversed its earlier holding in *Jackson*, citing as
its reason the numerous procedural problems that the decision had created.  *Ex
parte Ingram*, 675 So. 2d 863 (Ala. 1996).   The court specifically held that
*Ingram* was not to be applied retroactively.  675 So. 2d at 865.

*Brooks v. State*, 929 So. 2d 491, 496 (Ala. Crim. App. 2005).

sentence of death.  In other words, it has made his conviction and sentence less reliable."
(Doc. 40 at 3.)

The record shows that Brooks was sentenced on November 10, 1993.  (Vol. I at 13-
14.)  On November 12, 1993, Brooks was brought back to court at which time the trial court
relieved trial counsel from their representation of petitioner "for good cause shown, but for
filing of [a] Motion for New Trial."  (*Id*. at 14.)  The Case Action Summary indicates "Pen.
Trans." on November 18, 1993.[3]  (*Id*.)  The Notice of Appeal to the Alabama Court of
Criminal Appeals filed by the Trial Court Clerk notes the "Date of Judgment or Conviction"
and the "Date of Sentencing" was November 18, 1993.  (*Id*. at 33.)  The Clerk's Certificate
also indicates that Brooks was "adjudged guilty and sentenced to death" on November 18,
1993.  (*Id*. at 172.)  On December 17, 1993, trial counsel filed a Motion for New Trial and
the trial court appointed appellate counsel to represent Brooks on the Motion for New Trial
and on direct appeal.  (*Id*. at 17.)

The trial court denied the Motion for New Trial and Brooks appealed.  The Alabama
Court of Criminal Appeals and the Alabama Supreme Court specifically considered the
merits of the arguments, raised by appellate counsel in his Motion for New Trial,  that his
trial counsel were ineffective.  *See Ex parte Brooks*, 695 So. 2d 184, 191 (Ala. 1997); *Brooks
v. State*, 695 So. 2d 176, 181-82 (Ala. Cr. App. 1996).  After his conviction was affirmed on

---

[3]The meaning of "Pen. Trans." is not obvious from the Case Action Summary.
However, given the timing of the notation, it may indicate Brooks's transfer to the custody
of the Alabama Department of Corrections.

direct appeal, Brooks filed a Rule 32 petition, which the trial court denied.  On appeal, the Court of Criminal Appeals, recognized that *Jackson* was the controlling law and that Brooks's appellate counsel had "raised 11 claims of ineffective assistance of trial counsel in the amended motion for a new trial," which the appeals courts had addressed on direct appeal. *Brooks v. State*, 929 So. 2d 491, 496 (Ala. Crim. App. 2005).  Therefore, the Court of Criminal Appeals held, "[A]ny claims related to the performance of trial counsel are procedurally barred in [the Rule 32] proceeding." *Id*.

Section 2254(d) provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (d); *see also Knowles v. Mirzayance*, 129 S. Ct. 1411, 1418-19 (2009) ("Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d)(1), a federal court may not grant a state prisoner's habeas application unless the relevant state-court decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'").

4

Nothing in the record indicates that the state courts acted "contrary" to any federal law or unreasonably applied federal law in addressing the merits of Brooks's claims of ineffective assistance of trial counsel or any other claims raised in his Motion for a New Trial. The *Jackson* bar issue is a question of state law; it does not involve any question of federal law.

Also, the court finds that the state courts' decision are not based on an unreasonable determination of the facts. In this case, the state courts reasonably could have considered the sentencing date to be November 18, 1993, the dates set forth in the Clerk's Certificate and the Notice of Appeal, in which case the December 17, 1993, Motion for New Trial was timely filed. Or, the court could have considered the release of Brooks's trial counsel on November 12, 1993, to be an extension of the deadline for filing the Motion for New Trial. Maybe, the trial court considered the *Jackson* procedure moved the date for filing the Motion for New Trial to 30 days after the transcript of the trial was prepared and served.

Regardless, because the state court reasonably applied *Strickland* to the merits of Brooks's claims of ineffective assistance of trial counsel and because he has not established any federal law contrary to the state's procedure, he is not entitled to any relief pursuant to 28 U.S.C. § 2254(d) based on the *Jackson* bar.

## B.    REASONABLE DOUBT JURY INSTRUCTION

Brooks argues that this court should address *de novo* the issue of whether his trial and appellate counsel were ineffective for failing to raise the issue of the trial court's failure to

properly charge the jury as to reasonable doubt.  (Doc. 40 at 9-10.)  However, he concedes, "if this Court remains of the opinion that the argument concerning the *Jackson* bar has no merit, then at this level of the review the claim is due to be dismissed."  (*Id*. at 10.)

As set forth above, the court finds the *Jackson* bar issue has no merit.  Therefore, the court finds that Brooks is not entitled to relief on this ground.

## C.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL REGARDING BROOKS'S PRESENCE AT ALL PHASES OF THE TRIAL

Brooks argues that he was excluded from a conference, between the trial judge and counsel held after the guilt phase and before the penalty phase, during which "trial strategy for the penalty phase [was discussed]," and "strategic decisions impacting [his] case were made."  (Doc. 40 at 7-8 [citing Vol. 9, tab 26 at 52].)  He contends, "Clearly the hour long meeting discussing the strategy of the penalty phase of a death penalty case was critical to the outcome and Brook's presence would have contributed to the fairness of the procedure."  (*Id*. at 8.)  In its prior opinion, the court held that this issue was procedurally barred.[4]

---

[4]The court held:

Brooks argues that he was prejudiced by not being present at the hearing held after the jury found him guilty but before his sentencing hearing.  (Doc. 37 at 29.)  He contends:

It seems that an in chambers discussion with the prosecutor, trial judge and defense counsel discussing the penalty phase of his trial and discussing what if any mitigating evidence is to be presented qualifies as a critical stage in his proceeding. . . .  Because the decision reached during this meeting was contrary to the strategy Mr. Brooks wanted his trial counsel to pursue, it is more than probable that he was prejudiced

Nevertheless, even if this court considers the merits of Brooks's claim, he cannot show that his counsel was ineffective in failing to raise this issue on appeal.

The law is well settled "that an accused has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Faretta v. California*, 422 U.S. 806, 820 n.15 (1975)(citing *Snyder v. Massachusetts*, 291 U.S. 97 (1934), *overruled on other grounds Malloy v. Hogan*, 378 U.S. 1 (1964)).

> The Court has assumed that, even in situations where the defendant is not actually confronting witnesses or evidence against him, he has a due process right to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge. Although the Court has emphasized that this privilege of presence is not guaranteed when presence would be useless, or the benefit but a shadow, due process clearly requires that a defendant be allowed to be present to the extent that a fair and just hearing would be thwarted by his absence. Thus, a defendant is guaranteed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure.

*Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)(internal citations and quotations omitted).

---

> by his absence.

> (*Id*. at 29-30.)

> The Alabama Court of Criminal Appeals found this claim was abandoned because "Brooks did not question his appellate attorney as to why this claim was not raised; therefore, we presume that appellate counsel's performance in this regard was reasonable." *Brooks v. State*, 929 So. 2d at 513. Brooks has presented no basis for reversing this decision. Therefore, his Petition will be denied as to this issue.

(Doc. 38 at 47-48.)

Due process does not require a defendant's presence "when presence would be useless, or the benefit but a shadow." *Snyder*, 291 U.S. at 106-07.  Rule 43, of the Federal Rules of Criminal Procedure, codifies "[t]he right to be present during one's trial [that] arises from the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth Amendment." *United States v. Brantley*, 68 F.3d 1283, 1290-91 (11th Cir. 1995)(citing *United States v. Gagnon*, 470 U.S. 522, 526 (1985)).  Rule 43(b)(3) states, "A defendant need not be present under . . . the following circumstances:  . . .  (3) . . . The proceeding involves only a conference or hearing on a question of law."  Fed. R. Crim. P. 43(b)(3); *see also Proffitt v. Wainwright*, 685 F.2d 1227, 1257 (11th Cir. 1982)(citing *United States v. Provenzano*, 620 F.2d 985 (3d Cir.), *cert. denied*, 449 U.S. 899 (1980)).  "[I]f the proceeding involves only legal questions, the defendant's absence would not impact his defense because it is likely he would not contribute any expertise on such matters." *United States v. Moe*, 536 F.3d 825, 830 (8th Cir.  2008)(citing *Stincer*, 482 U.S. 730, 745 (1987)).  Therefore, "A defendant has no federal constitutional right to attend a conference between the trial court and counsel to determine jury instructions" or to discuss the admissibility of evidence. *Jones v. Dugger*, 888 F.2d 1340, 1343 n.3 (11th Cir. 1989)(citing *United States v. Graves*, 669 F.2d 964 (5th Cir. 1982)); *see also People v. Arce*, 662 N.Y.S.2d 495, 496 (N.Y.A.D. 1997)("Defendant was not entitled to be present at a hearing conducted in the course of his cross-examination to determine the purely legal question of whether he had opened the door to the admission of evidence previously precluded . . . .")(citations omitted)

The trial court, shortly after the meeting, described what had occurred as follows:

THE COURT:  Mr. Brooks, it is my job to adjudge you guilty of these several offenses.  You are adjudged guilty of capital murder as alleged in count one of the indictment, the intentional murder and rape.  Moreover, you are adjudged guilty in count two of the indictment, the intentional murder during the course of a first degree burglary.  And thirdly, you are adjudged guilty of capital murder, the intentional or purposeful killing of Ms. Campbell during the course of a first degree robbery.

We'll prepare for the second stage, fellows.  I'll be back here and can discuss it.

. . .

(Whereupon, the following proceedings were had and done out of the presence and hearing of the jury:)


. . .

THE COURT: . . .  We have talked at some length in the office, just the lawyers and me, and if I make a mistake, fellows, you will correct me.  But the State, on aggravating circumstances, will be going under 13A-5-49(4) and the State will contend for aggravation that the capital offense was committed while the defendant was engaged in first degree rape, first degree burglary and first degree robbery.  And moreover, the State will contend that the capital offense was essentially heinous, atrocious or cruel compared to other capital offenses and will seek to prove that through a couple of witnesses, Dr. Simmons and Ms. Rollen, I believe.

The defense has asked that I charge on mitigating circumstances denoted at 13A-5-51(1), the defendant has no significant history of prior criminal activity.  We expect Mr. Boudreaux to establish a petty larceny conviction at some point.  The age of the defendant at the time of the crime . . . .

. . .

9

THE COURT:  . . .  Moreover, I will be telling them about 13A-5-52, character, record, et cetera.  Is that right?

MR. BOUDREAUX:  Yes, sir.

THE COURT:  I told the guys, Walter [the court reporter], I propose to read from the jury instruction suggested by the now Honorable Judge Ed Carnes.

(Vol. 7 at 1084-87.)

Brooks cites the court to the following testimony of his trial counsel at the hearing

before the circuit court on his Motion for New Trial:

Q.  [W]hat if anything did you do toward the mitigation evidence to be presented at the sentencing phase?

A.  Well, there's one thing that the record probably does not reflect, and that is the fact that between the guilt phase and the penalty phase, the court and the lawyers, and, of course, I think the defendant was present, or certainly available, had a couple of meetings in discussing how we were going to proceed.

My main concern was whether or not I was going to open the door for what I considered to be some very damaging potential testimony by the victim's family who, as you may or may not know, were here in mass during the trial, crying, sniffling, filling the courtroom with themselves and their supporters.

As you well know, the law is now that the victim's [sic] under certain circumstance can be heard.  I had a difficult time even getting Mr. Brooks'[s] mother to attend the whole trial.  In fact, she didn't even get here until the trial was underway.  We were outnumbered in the courtroom, so to speak.  It is a very sympathetic case on behalf of the victim.

I might point out that the court even called the Attorney General's office so that the lawyers might speak with [his] expert down there on death penalty cases so that I might structure how I wanted to handle the mitigation hearing so as to avoid allowing – to avoid opening the door for [the

10

prosecutor] to parade the victim's family up here to talk about how wonderful
a person she was and drive even more nails into the coffin in this case.

(Vol. 9, tab 26 at 51-52.)  Similarly, the prosecutor testified that in-chambers proceedings

were about whether Brooks's counsel would open the door to victim-impact statements and

Brooks's prior arrest if character witnesses were presented during the penalty phase; he

stated:

> MR. BROWN:  . . .  I didn't know we were going to get all into this
> procedural stuff.  I just wanted to say one thing about the mitigation phase of
> this trial since I think it may not be clear from the trial record, and since
> [appellate counsel] has mentioned that, I think she used the terminology that
> there was a very minimal or brief statement by the defendant's mother during
> the punishment phase of the trial in mitigation.  The record may not reflect but
> I am sure that the Court will recall that prior to the beginning of that stage of
> the proceedings we had an extensive discussion in chambers with regard to
> Payne versus Tennessee,[5] even to the point which I think Mr. Boudreaux
> mentioned calling the Attorney General's office.
>
> Out of an abundance of caution, even though Payne versus Tennessee
> is ambiguous as to whether the State can do this in their case in chief on the
> penalty phase, we in an effort to bend over backward to try this case clean, we
> won't go into any of the [evidence of ]what a wonderful person Ms. Campbell
> was unless the defense puts somebody on the witness stand to sob and talk
> about how wonderful the defendant is.  Then clearly Payne versus Tennessee
> will be applicable and we would be entitled to do that.
>
> So, I think the brief or minimal testimony offered by the defendant's
> mother on his behalf in mitigation emanated from that discussion and then
> from the fear or what was to follow pursuant to the provisions of Payne versus
> Tennessee.  And I don't think that's on the record during the trial, and I
> wanted to make it clear now.

---

[5]*Payne v. Tennessee*, 501 U.S. 808 (1991), held that the Eighth Amendment erects no
per se bar against the introduction of victim impact evidence during a capital sentencing
hearing.  *Payne*, 501 U.S. at 827-30.

11

(Vol. 9, Tab R-26 at 122-24.)

As is apparent from the record, the chambers conference from which Brooks alleges he was excluded related to jury charges and whether evidence of Brooks's arrest for burglary and victim impact statements would be admissible in response to the presentation of character witnesses. Brooks had no constitutional right to attend this bench conference that was solely concerned with legal issues.

"An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)(citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

the conduct from counsel's perspective at the time." *Id*. at 689.   Therefore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*.

> The purpose of ineffectiveness review is not to grade counsel's performance. We recognize that representation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad.  To state the obvious:  the trial lawyers, in every case, could have done something more or something different.   So, omissions are inevitable.   But, the issue is not what is possible or what is prudent or appropriate, but only what is constitutionally compelled.

*Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(citing, *inter alia*, *Burger v. Kemp*, 483 U.S. 776, 794 (1987); *Strickland*, 466 U.S. at 693, 697)(internal quotations, citations, and footnote omitted).

"When assessing [petitioner's] claim that counsel were ineffective, it is important to keep in mind that in addition to the deference to counsel's performance mandated by *Strickland*, the AEDPA adds another layer of deference – this one to a State court's decision – when we are considering whether to grant federal habeas relief from a State court's decision." *Williams v. Allen*, ___ F.3d ___, 2010 WL 726253, *7 (11th Cir. 2010)(quoting *Rutherford v. Crosby*, 385 F.3d 1300, 1309 (11th Cir. 2004)(internal quotations omitted). "Thus, [petitioner] not only has to satisfy the elements of the *Strickland* standard, but he must also show that the State court applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id*. (quoting *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir.

2008)(quoting *Rutherford*, 385 F.3d at 1309)(internal quotations and emphasis omitted). "That is why the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between, and cases in which deliberate strategic decisions have been found to constitute ineffective assistance are even fewer and farther between." *Williams v. Head*, 185 F.3d 1223, 1227 (11th Cir. 1999).

Assuming the court erred in finding that this claim was procedurally barred, the court finds no merit to Brooks's claim that his appellate counsel was ineffective for failing to argue that his constitutional right to be present at all critical stages of the proceedings was violated by his failure to attend the conference between the court and counsel prior to the penalty phase.  First, the court finds that any error committed by appellate counsel was not so serious as to deny Brooks his right to counsel.  As set forth above, the court finds no evidence that Brooks's right to be present at all critical stages was violated.  Certainly, the record does not support a finding that appellate counsel's performance was constitutionally defective based on her failure to raise this issue on direct appeal.

The court also notes that Brooks did not, and cannot, show any prejudice caused by his failure to attend the charge conference.  As set forth in the court's prior Memorandum Opinion, Brooks cannot show prejudice based on the failure to present mitigating evidence during the penalty phase; therefore, he cannot establish prejudice based on his failure to attend a hearing when the trial court discussed with counsel the admissibility of victim

14

impact evidence and evidence of his arrest for burglary if character evidence was offered during the penalty phase.  (*See generally* doc. 38 at 48-55.)

Brooks is not entitled to any relief on the ground that his appellate counsel was ineffective for failing argue he was denied his constitutional right to be present at the bench conference between the guilt and penalty phases of his trial.

## D.   INEFFECTIVE ASSISTANCE OF COUNSEL BASED ON FAILURE TO INVESTIGATE AND PRESENT MITIGATION EVIDENCE DURING THE PENALTY PHASE OF HIS TRIAL AND FAILURE TO PURSUE ISSUE ON DIRECT APPEAL.

The court has reviewed Brooks's Motion to Alter or Amend regarding trial and appellate counsel's ineffective performance regarding mitigation evidence.  As set forth in the court's Memorandum Opinion, the circuit court specifically found "no reasonable probability that the balance of aggravating and mitigating circumstances underlying [Brooks]'s death sentence would have been different if the judge and jury had heard the [evidence presented during the Rule 32 hearing]."  (Doc. 38 at 53 [internal citation omitted].) The Alabama Court of Criminal Appeals found, "We, like the circuit court, are confident that death was the appropriate sentence in this case and that any of the alleged mitigating evidence that was not presented at trial but that was presented at the Rule 32 proceedings would not have [affected] the result."  *Brooks v. State*, 929 So. 2d 491, 512 (Ala. Crim. App. 2005), *quoted in* doc. 38 at 54.

This court found that the decisions of the Alabama courts on this issue were not unreasonable based on the lack of evidence of any prejudice.  Nothing in the Motion to Alter

or Amend the Judgment compels a different result.  Therefore, Brooks's Motion to Alter or Amend the Judgment on this ground will be denied.

**CONCLUSION**

For the foregoing reasons, the court is of the opinion that Brooks's Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure 59(e), (doc. 40), is due to be denied.  An Order denying Brooks's Motion to Alter or Amend the Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 29th day of March, 2010.


_Sharon Lovelace Blackburn_
SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE